[S. F. No. 6279.    In Bank.—January 17, 1916.]

THEODORE N. TUCKER and J. D. SHERER, Heirs of Eva May Tucker, Deceased, Respondents, v. UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Appellant.

NEGLIGENCE — LAST CLEAR CHANCE — COMPARATIVE NEGLIGENCE. — The doctrine of "last clear chance" is, and for many years has been, a part of the law of California, and that of "comparative negligence" has never held a place in its jurisprudence.

ID.—CONTRIBUTORY NEGLIGENCE — DEFENSE AVAILABLE WHEN DEFENDANT'S NEGLIGENCE WAS GROSS—FAILURE TO FIND.—The contributory negligence of a person injured or killed is a proper matter of defense, whether the negligence of the defendant was gross, ordinary, or slight, and in an action tried by the court, in which such defense is pleaded, the failure to find thereon is error.

ID.—ELECTRIC STREET RAILROAD—KILLING PERSON ON CAR TRACK—FAILURE TO FIND ON QUESTION OF "LAST CLEAR CHANCE."—In this action to recover damages for the death of a person while standing or walking on a street-car track, as the result of the alleged negligence of defendant's servants in the operation of an electric car, the question of "last clear chance" was, under the circumstances disclosed by the evidence, one which the court should have determined, there having been no jury.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial.    J. E. Prewett, Judge presiding.

The facts are stated in the opinion of the court.

Wm. M. Abbott, Wm. M. Cannon, and Kingsley W. Cannon, for Appellant.

A. M. De Vall, and Barclay Henley, for Respondents.

MELVIN, J.—Plaintiffs were successful in an action against the defendant for damages for the death of Eva May Tucker, which, it was alleged, was due to the negligence of defendant's servants in the operation of an electric street-car.    Defendant appeals from the judgment and from an order denying its motion for a new trial.

The accident took place at about 8 o'clock in the evening. The car had just traversed the curve from Clement Street to Thirty-third Avenue, in San Francisco, and was proceeding in a southerly direction on the last named thoroughfare, which at that place is unpaved. The car almost stopped at the curve, but on signal from the conductor the motorman applied the current and the car moved into Thirty-third Avenue with increasing speed. The night was dark and somewhat foggy. There were no street lights, but the headlight was shining brightly, rendering objects on the track clearly visible for a distance of forty feet from the motorman's position. The car was brilliantly illuminated within, and its light could have been seen by a person having normal vision for a much greater distance than forty feet. The car was a heavy one and it made considerable noise while in motion, particularly in taking the curve into Thirty-third Avenue. When it began its journey along the avenue, the conductor went forward to the front platform. There was testimony tending to show that thereupon he engaged in some sort of a scuffle with the motorman and that, putting on the motorman's cap, he took hold of the controller bar. This testimony is disputed, however, as we will have occasion to note in the further discussion of this case. The employees of defendant saw Eva May Tucker when the car had reached a point near the middle of the block about three hundred feet from the curve. It was then moving quite rapidly. She was a few feet in front of the car and was standing, or walking, on the track, with her back partly turned toward the car. The motorman attempted to stop the car but could not do so until the woman had been struck and killed.

The trial was before the court without a jury, and judgment was given in favor of the plaintiffs for two thousand five hundred dollars.

The court failed to find upon the alleged contributory negligence of the deceased. This is specified as error, and the appellant also asserts that upon the uncontradicted evidence the deceased was guilty of contributory negligence proximately causing her death.

The respondents do not seriously question that the failure of the deceased to take note of the approach of the brilliantly illuminated car and to remain in a place of safety until after it had passed would have amounted ordinarily to negligence,

but they insist that her negligence was not the proximate cause of death, because the conduct of the servants of the defendant was gross negligence against which (they say) the defense of contributory negligence is of no avail. They cite numerous authorities from other states upholding the rule that gross negligence, amounting to a reckless disregard of public safety, when the death of another is directly due to such gross negligence, precludes a plea of contributory negligence on the part of the decedent to defeat the action. We will not pause to analyze these authorities, because the doctrine of "last clear chance" is, and for many years has been, a part of the law of California, and that of "comparative negligence" has never held a place in our jurisprudence.

The pleadings clearly raised the issue, and the court was bound to find upon the question whether or not deceased was guilty of contributory negligence, proximately causing her death. The failure of the court to make a finding responsive to this issue was error.

We are urged to declare that the scuffle between the carmen and the unlawful rate of speed of the car were facts established without controversy, and that therefore gross contributory negligence of the defendant's servants continuing to the very instant of the impact of the car with the body of the pedestrian makes the matter of her contributory negligence one of no moment. But the record reveals the fact that there was a conflict of testimony upon the subjects of the car's rate of speed and the conduct of the motorman and the conductor. Some of the witnesses testified that there was a scuffle in which the men exchanged hats, but they denied this, and each of them testified that the conductor removed the motorman's cap for the purpose of consulting the time-table pasted inside. There was other testimony that the car was not exceeding the lawful rate of eight miles an hour when it hit the woman.

But really it makes no difference in the analysis of a defense based upon the contributory negligence of a person injured or killed whether the negligence of the defendant was gross, ordinary, or slight. "Contributory negligence is as good a defense to a claim founded upon gross negligence as to any other." (1 Shearman and Redfield on Negligence, 6th ed., 159.) The rule is thus stated in the opinion of this court in *Sego* v. *Southern Pacific Co.*, 137 Cal. 407, [70 Pac.

279] : "No conduct on the part of the company, no matter how willful and wanton, will release a person from using ordinary care in preserving himself from danger and consequent injury. As said in the case cited, under such circumstances both of the parties are equally at fault, and there can be no recovery. Even conceding the negligence of the company to be the greater negligence, still in this state the courts do not recognize the principle of law relating to comparative negligence which obtains in some of our sister states." This quotation merely restates the principle embodied in section 1714 of the Civil Code which is, in part, as follows: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself." In *Bennichsen* v. *Market Street Ry. Co.*, 149 Cal. 20, [84 Pac. 420], the evidence tended to show that the motorman, at the moment of the accident, was looking into the car instead of fixing his attention upon the track ahead. It was held that such a case can be taken out of the doctrine of contributory negligence only where defendant had *actual knowledge* of plaintiff's perilous situation. The court cites *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15], and *Herbert* v. *Southern Pacific Co.*, 121 Cal. 232, [53 Pac. 651], in support of the rule. This rule has been announced many times. For example, in *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748, 754, [134 Pac. 709], it was again held that the doctrine of "last clear chance" is based upon the fact that the defendant actually did know of the danger and not upon the proposition that by the exercise of common prudence he should have been aware of it. Clearly, in the case at bar the court erred in failing to find upon this subject.

The only evidence regarding the position of the woman when she first appeared upon the track comes from the two servants of the defendant. The conductor testified that she was six or eight feet in front of the car when he first observed her. At the same moment the motorman "threw off the motor and applied the air." The car moved twelve or fifteen feet between the time witness saw the woman and the

moment it stopped. He did not give any estimate of the speed of the car. The motorman testified that the car was running at a rate of speed between eight and ten miles an hour at the time of the accident. According to his estimate the woman was from six to eight feet in front of the car when he first saw her. Witness McCausland, who was a passenger, said that the speed was from six to eight miles an hour. Formerly he had been in the employ of the defendant as a motorman. He said that a car in the position of the one in question, just coming out of a curve on such a grade as existed at that place, could and should have been stopped within five feet. Witness Tucker, another experienced man who had worked as a motorman, testified that a car could be stopped on that grade in five feet. In this state of the evidence, we cannot say that, as matter of law, the defendant was entitled to a judgment based upon the contributory negligence of Mrs. Tucker. The question of "last clear chance" was, under the circumstances, one which the court should have determined (there was no jury) upon the facts presented by the testimony.

It follows that the judgment and order should be, and accordingly they are, reversed.

Henshaw, J., Sloss, J., Shaw, J., and Angellotti, C. J., concurred.