[L. A. No. 3649.   Department Two.—February 2, 1916.]

CAROLYNE WOOD, Appellant, v. LOS ANGELES RAILWAY CORPORATION (a Corporation), Respondent.

NEGLIGENCE—ELECTRIC RAILROAD—DUTY OF MOTORMAN TO PEDESTRIANS WHEN ROUNDING CURVE.—Failure of a motorman of an electric car to stop the car is not negligence where the party, struck by the rear end of the car while rounding a curve and caught between the car and a team, was opposite the straight portion of the track and moved to the curved portion of the track after the front portion of the car had passed her, and the motorman could not see her move toward the curved portion of the track, and could not see the team advancing toward her.

ID.—DUTY OF MOTORMAN TO PEDESTRIANS.—It is not the duty of a motorman to keep watch of pedestrians after the forward part of the car has passed them safely.

Id.—Negligent Assumption of Place of Danger.—The rule which permits a plaintiff who has negligently assumed a place of danger to recover damages depends upon actual knowledge of the danger by the person who inflicts the injury.

Id.—Burden of Proof of Negligence—Preponderance of Evidence—Instructions.—An instruction that in an action for damages for personal injuries the burden of proof is on the plaintiff to prove the alleged negligence by a preponderance of evidence is correct.

Id.—Joint Tort-feasors.—An instruction that the burden was on plaintiff of proving by a preponderance of evidence both defendant's negligence and the fact that it contributed directly or proximately to the injury is not erroneous, because of its failure to take into consideration the action of a third party, where the subject of joint tort-feasors was fully presented in another instruction.

Id.—Duty of Motorman to Pedestrians — Instructions.—In an instruction to the effect that where a street railway car is being operated with ordinary care, and the front end of it passes a pedestrian on the street, the motorman is not bound to assume that another vehicle to the rear of such car would be so carelessly driven as to crowd the pedestrian into the rear of any portion of the car, the words "to the rear" are susceptible of being interpreted as meaning "toward the rear" and as all the evidence in the case showed that the wagon was toward the rear of the car the jury must have so understood the instruction, and it therefore does not improperly assume that the wagon was behind the car.

Id.—Instructions—Pedestrian Caught Between Rear End of Car and Team.—It is not error to instruct the jury that, if they found that the front end of the car passed plaintiff in safety and that afterward she moved and either walked so close to the car that it struck her, or else that a team to the rear both of the plaintiff and of the car was driven in such a manner as to compel the plaintiff to walk in close to the track and hem her in between the team and the rear of the car and she was struck as a result thereof, plaintiff could not recover.

Id.—Interpretation of Same—Prerogative of Jury.—An instruction that "if from the evidence in this case you find that the plaintiff started to cross Ninth Street, and that the front end of defendant's said car passed the said plaintiff, and that at the time it passed the said plaintiff the mule team was to the east of said plaintiff and to the east of the motorman, and that the said motorman had no reason to apprehend any danger to said plaintiff, and you thereafter find that the said rear end of the said car struck plaintiff, either by her voluntarily walking so close as to be in danger of being struck by the same, or by the mule team being carelessly driven so as to compel her to walk toward the car, then I charge you that the plaintiff cannot recover herein and your verdict must be for the defendant," means that if from what the motorman knew

and saw under the circumstances assumed by the instruction he had no reason to apprehend danger to the plaintiff, he was not responsible for her injuries, and as it leaves to the jury and not to the motorman the question of whether or not he apprehended danger, it is unobjectionable.

ID.—Instruction — Moving from Place of Safety.—An instruction that "if from the evidence in this case you find that as the front end of the defendant's car reached a point opposite where plaintiff was standing in the street, the said plaintiff was in a position of safety, and that she either remained in said position, or stepped to the south and allowed the front end of the said car to pass her, and if you further find that at that time a mule team was behind the said plaintiff and behind the said motorman in charge of said car, and that plaintiff then turned and walked between the wagon and the end of the car toward the curve of the track and was struck as a result thereof, then the court charges you that the plaintiff cannot recover herein, and your verdict must be for the defendant" is a correct statement of the law.

ID.—Proximate Cause.—An instruction to the effect that if plaintiff was not placed in any danger by reason of the negligence of the defendant, plaintiff could not recover, is equivalent to charging that defendant's act or omission must have some causal connection with plaintiff's danger in order to render defendant liable and is correct.

ID.—Right of Way of Traffic—Evidence Properly Stricken Out.—Where it does not appear that the failure of the motorman of an electric car to give the right of way on a street to a team contributed to the accident, it is proper to strike out testimony of a police officer that he "thought they [meaning the mules and wagon] should have had the right of way."

ID.—Contributory Negligence as a Defense to Complaint Founded on Gross Negligence.—Contributory negligence may be available as a defense to a complaint founded upon gross negligence.

APPEAL from an order refusing a new trial of the Superior Court of Los Angeles County.   M. T. Dooling, Judge presiding.

The facts are stated in the opinion of the court.

Tanner, Odell, Odell & Taft, for Appellant.

Gibson, Dunn & Crutcher, and Norman S. Sterry, for Respondent.

MELVIN, J.—Action for personal injuries by Carolyne Wood who, while attempting to cross West Ninth Street, in

CLXXII Cal.—2

the city of Los Angeles, was struck by an electric car belonging to the defendant corporation. The case was tried before a jury, and a verdict for defendant was given. Plaintiff moved unsuccessfully for a new trial, and she has appealed from the order denying said motion.

Appellant insists that the verdict was not justified by the evidence, and she attacks numerous instructions as being so erroneous that the jurors were misled greatly to her prejudice. Error is also predicated upon the refusal of the court to give certain offered instructions.

The accident occurred at or near the corner of Spring and West Ninth Streets. Defendant operates cars upon double tracks extending along Ninth Street and curving into Spring Street extending thence north from Ninth along Spring Street. The car in question, which is about forty feet long, had traveled south on Spring Street and was turning into Ninth. It was on the right-hand track, that is the westerly track on Spring Street and the northerly track on Ninth Street. According to plaintiff's own testimony, she was going north on Spring Street, and she attempted to cross Ninth Street. Just before crossing she saw a team coming from the east, that is from Spring Street into Ninth Street. She started to cross in front of the team, which was attached to a heavy wagon. Then for the first time she saw a car coming around the curve at a rapid rate. "I then turned," she testified, "and thought I would go back on to the sidewalk, and the team had gotten so it was directly back of me and was prancing. . . . It was advancing perhaps a little." When she started across the street Mrs. Wood was west of the curve and opposite the straight part of the track on Ninth Street. The front end of the car passed without striking her. When she was struck the *back* part of the car hit her, and she was opposite the curved portion of the track. When the car approached she went east. She said: "The wagon was about stopped when I first saw the street-car, with the horses just prancing, if not stopped, moving very slowly. The horses were nearly to me when I first saw the car. I was headed north. I hadn't turned at that time to walk towards the curve. The position of the wagon was back of me; south of me. I was going north. The horses were a little east and a little south of my position when I first saw the car. The team I guess was three or four feet away from me. When I first saw the car, about two feet; I

don't think over two feet.   About two feet east and three or four feet south of me. . . . I was opposite the straight part of the track, west of the curve at that time.   The car was coming rather fast around the curve. . . . I stepped back before the front end of the car got to me, towards the south.   The car's front end passed me.   Then I started again and turned and walked east towards the rear end.   I don't know whether after I started, walking towards the rear end of the car, the team advanced.   The rear end of the car swung around and hit me.   I faced the wagon; I turned and faced the wagon. My back was towards the car.   It struck me along the left side. . . . I don't know whether that wagon stopped or went right along. . . . The car didn't hit the wagon at all.''

Officer Bach, the policeman in charge of the traffic at that place testified: ''I blew one blast of the whistle for the traffic to go east and west.   That gives the West Ninth Street car the right of way through there and there was a gravel team going there with a pair of mules, and the car came down and the front end threw the mules over one side and they started up that side and I looked around just in time to see this woman step in between them, when the back end come around she got caught in there; she couldn't get out.   The horses kept going and the car was going so she didn't have any chance to get out, and I saw her roll around and fall down on the ground.''   He also said: ''When I saw the plaintiff she was standing on track No. B, as marked on the diagram, the track that the cars going east on Ninth and north on Spring Street run.   The next minute I saw her step in between the wagon and the car facing me, and the moment she stepped in between them I started right there because I saw that she was going to be hit.''

The motorman testified that upon receiving the proper signal he started the car around the curve.   A wagon coming from East Ninth Street across Spring Street and about to enter West Ninth Street got within about eight feet of him as he was making the curve, and then turned out to the left. When the front end of the car rounded the curve the motorman saw Mrs. Wood on the crossing.   She was on the south track and the fender of the car passed about four feet from her.   He was making the curve slowly (at the rate of about three or four miles an hour) but the car was moving faster than the wagon.   Just as the car turned the curve he received

a signal (three bells) and stopped the car immediately. He looked around to see what was the matter and observed the injured woman.

Appellant's counsel contend that the motorman was negligent in that, seeing the plaintiff on the curve and the prancing mules nearby he did not forsee an accident and stop his car instantly. The trouble with this contention is that he did not see her on the curve. She and he both testified that when the front end of the car passed her, she was at the crossing opposite the straight track. The motorman testified that the team turned off to the left after coming near to the front end of the car at the beginning of the turn into Ninth Street and it does not appear that he saw the team or the wagon afterward. The plaintiff, the conductor, and indeed all of the witnesses agree that when plaintiff was struck she was between the car and either the mules or the wagon. As the car was forty-two feet long and the team and wagon together less than half that length, obviously the motorman could not, without leaving his post, observe the mules nor the peril of the plaintiff just before the accident, nor could he see that Mrs. Wood had moved from her position opposite the straight tracks and had gone to a place near the curve where the rear end of the car in rounding the curve would strike her. While it is true that courts will not hold persons suddenly placed in peril to a nice selection of a place of safety, nor blame them for lack of judgment under the stress of excitement and fear, nevertheless we cannot say that the jurors were not justified in believing that plaintiff was guilty of contributory negligence in running *toward* the prancing mules and the wagon which was almost at rest, and placing herself between the swinging car on the curve, and the team or the wagon, instead of seeking safety in the opposite direction or by standing still. It nowhere appears that the motorman ever was in a position to observe that Mrs. Wood was in peril from the prancing animals. It was not the duty of the motorman to keep watch of pedestrians after the forward end of the car had passed them safely. In a case similar to this the supreme court of Kentucky said: "This court has, in a long line of cases, held, that it is the duty of those in charge of a street-car to keep a lookout so as to avoid injuring those who may be crossing or upon the street in front of the moving car. But this rule has never been so extended as to require the employees in charge

of the car to keep a lookout at corners and curves so as to prevent others using the street from colliding with the rear end of the car.'' (*Louisville Ry. Co.* v. *Ray* (Ky.), 124 S. W. 314.)   The same rule, substantially, is stated in *Riddle* v. *Forty-second St. etc. Ry. Co.*, 173 N. Y. 331, [66 N. E. 22], *Waters* v. *United Traction Co.*, 114 App. Div. 275, [99 N. Y. Supp. 763], *Widmer* v. *West End St. Ry. Co.*, 158 Mass. 53, [32 N. E. 899], (a case very similar in its facts to the one at bar), *Garvey* v. *Rhode Island Co.*, 26 R. I. 80, [58 Atl. 456], *Hayden* v. *Fair Haven & W. R. Co.*, 76 Conn. 357, [56 Atl. 613], and *South Covington etc. Ry. Co.* v. *Besse,* 33 Ky. Law. Rep. 52, [16 L. R. A. (N. S.) 890, 108 S. W. 848]. In *Hamlin* v. *Pacific Electric Ry. Co.*, 150 Cal. 776, 783, [89 Pac. 1109], this court approved an instruction involving hypothetically a state of facts somewhat analogous to those which existed in this case. The jurors were told that if when about a block away from the point of the accident the motorman saw the plaintiff riding his bicycle parallel with the track, and far enough away for the car to pass him in safety, and if, after giving warning, the motorman caused the front end of the car to be propelled safely past plaintiff, then the motorman was not negligent if the plaintiff altered his position with reference to the track so that the back step struck him.   These cases furnish ample authority, if authority were needed, to sanction the ruling of the superior court that the verdict was supported by the evidence.   The rule which permits a plaintiff who has negligently assumed a place of danger to recover damages depends upon actual knowledge of the danger by the person who inflicts the injury.   (*Bennichsen* v. *Market St. Ry. Co.*, 149 Cal. 20, [84 Pac. 420]; *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15]; *Herbert* v. *Southern Pacific Co.*, 121 Cal. 232, [53 Pac. 651]; *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 754, [134 Pac. 709]; *Tucker* v. *United Railroads,* 171 Cal. 702, [154 Pac. 835].)

The criticisms of the instructions are without substantial merit.   An attack is made upon an instruction by which the jury was told in plain and direct language that the burden was on the plaintiff to prove the alleged negligence by a preponderance of the evidence.   It was almost a verbatim copy of an instruction approved in *Patterson* v. *San Francisco etc. Ry. Co.*, 147 Cal. 182, [81 Pac. 531].   It is said that the instruction was misleading because the jury might infer from it

that plaintiff was required to produce other proof of negligence than the acts of the defendant's servant himself. There is nothing in the language of the instruction to justify such fear. It merely states a well-known rule in well-chosen and well-approved language. The same unmerited criticism is directed to another instruction by which the jurors were told that the burden was upon plaintiff to prove, by a preponderance of evidence, both defendant's negligence and the fact that it contributed directly or proximately to the injury. Nor was the jury misled because this instruction failed to consider the possible negligence of the driver of the mule team as one of the proximate causes. The jury was elsewhere fully charged on the subject of the concurring negligence of joint tort-feasors in an instruction offered by plaintiff.

The jury was told that where a street railway car is being operated with ordinary care, and the front end of it passes a pedestrian on the street, the motorman is not bound to assume that another vehicle to the rear of said car will be so carelessly driven as to crowd the pedestrian into the rear or any portion of said car. This instruction does not improperly assume that the wagon was behind the car if we interpret the expression "to the rear" as "toward the rear." The language is susceptible of such interpretation, and as all of the evidence showed that the wagon was *toward* the rear of the street-car at the time of the accident, the jury doubtless so understood it.

It was not error to instruct the jurors that if they found that the front end of the car passed plaintiff in safety, and that afterward she moved, and "either walked so close to the car that it struck her, or else that a team to the rear both of the plaintiff and of the car was driven in such a manner as to compel the plaintiff to walk in close to the track and hem her in between the team and the rear of the car, and she was struck as a result thereof," then, and in that event, plaintiff could not recover. This was in consonance with the rule declared in the Hamlin case.

One of the instructions, the giving of which is specified as error by plaintiff, was as follows:

"If from the evidence in this case you find that the plaintiff started to cross Ninth Street, and that the front end of defendant's said car passed the said plaintiff, and that at the time it passed the said plaintiff the mule team was to the east of said plaintiff, and to the east of the motorman and that

the said motorman had no reason to apprehend any danger to said plaintiff, and you thereafter find that the said rear end of the said car struck plaintiff, either by her voluntarily walking so close as to be in danger of being struck by the same, or by the mule team being carelessly driven so as to compel her to walk towards the car, then I charge you that the plaintiff cannot recover herein and your verdict must be for the defendant.'' Counsel say that the words, ''that said motorman had no reason to apprehend any danger to plaintiff,'' left to the judgment of the motorman, and not to the jury, a decision whether he apprehended danger or not. The instruction may not be properly so interpreted. The whole instruction has reference to the belief of the *jurors* and not that of the motorman. It simply means that if, from what the motorman knew and saw under the circumstances assumed by the instruction, he had no reason to apprehend danger to the plaintiff, he could not be held responsible for her injuries. Of course, the decision regarding what he actually knew and saw was for the jurors upon full consideration of the evidence, and this prerogative was not taken from them by the instruction.

Defendant's proposed instruction number eleven given by the court was as follows:

''If from the evidence in this case you find that as the front end of the defendant's car reached a point opposite where plaintiff was standing in the street, the said plaintiff was in a position of safety, and that she either remained in said position or stepped to the south and allowed the front end of the said car to pass her, and if you further find that at that time a mule team was behind the said plaintiff, and behind the said motorman in charge of said car, and that plaintiff then turned and walked between the wagon and the end of the car towards the curve of the track and was struck as a result thereof, then the court charges you that the plaintiff cannot recover herein and your verdict must be for the defendant.'' Appellant's counsel say that it was absurd to tell the jury that if plaintiff ''was in a position of safety and remained in said position,'' and was struck by the car she could not recover. But the instruction has no such meaning or effect. The words, ''she either remained in said position or stepped to the south,'' clearly refer to the moment when she ''allowed the front end of the car to pass her.''

Defendant's instruction number thirteen told the jury that it was not enough for plaintiff to show that she was in a dangerous position when crossing Ninth Street, but "she must show that the dangerous position was caused by the negligence of the defendant." This instruction is attacked because it ignores her peril from the other vehicle and t'e prancing mules. But the instructions did not require the jury to find that the negligence of the defendant was the *sole* cause of Mrs. Wood's dangerous position before they could give judgment in her favor. It simply charged that if she was not placed in *any* danger by reason of defendant's negligence she could not recover. That is to say, defendant's act or omission must have had some causal connection with plaintiff's danger before said corporation could become liable. The correctness of this rule can scarcely be questioned.

But there would be little profit in following further in detail appellant's many criticisms regarding the instructions. We have examined the court's charge as a whole, and find that the jury was fairly and correctly instructed regarding the law applicable to the evidence.

The police officer Bach, who described the approach of the wagon drawn by mules, and the attempt to drive the animals into Ninth Street just as the car was turning into that thoroughfare said: "I thought they [meaning the mules and wagon] should have had the right of way." The court struck·out this testimony and properly. It was not shown that the failure to give the team the right of way had anything to do with the accident. Therefore the testimony was entirely immaterial.

It is argued that, "so gross was the neglect of the motorman in failing to stop his car when he saw the plaintiff in a position of extreme danger . . . contributory negligence cannot be imputed to the plaintiff, even though she walked toward the rear end of the car in an effort to escape, and thereby came in contact with the car when it swung around the corner." *Waniorek* v. *United Railroads,* 17 Cal. App. 121, [118˙ Pac. 947], is cited in support of the argument.

In the first place, it was not shown, as we have seen, that the motorman saw Mrs. Wood in a position of great peril. In the second place, contributory negligence may be available as a defense to a claim founded upon gross negligence (*Sego* v. *Southern Pacific Co.,* 137 Cal. 407, [70 Pac. 279]; *Tucker* v.

*United Railroads,* 171 Cal. 702, [154 Pac. 835]) ; and finally
the citation does not justify the argument. The case of
*Waniorek* v. *United Railroads* was one in which the evidence
showed that plaintiff, who was a *passenger* on an electric
car, was frightened by the blowing up and burning of a "con-
troller," caused by the negligence of the corporation. He
jumped from the car and was injured. The court refused to
give an instruction to the effect that if an ordinarily prudent
person, under like circumstances, would have done as plaintiff
did, then he was not guilty of contributory negligence in leap-
ing from the car. This refusal was held error, but the district
court of appeal quoted with approval from Thompson on Neg-
ligence the declaration that the rule is based upon estoppel,
and "proceeds upon the theory that the misconduct of the
carrier has produced the erroneous action of the passenger,
and that it does not therefore lie in the mouth of the carrier
to defend an action for damages on the ground of such erro-
neous action thereby taking advantage of his own wrong."
The facts of the two cases are so strikingly dissimilar that the
Waniorek case is of no value as an authority in deciding this
appeal.

The order denying appellant's motion for a new trial is
affirmed.

Henshaw, J., and Lorigan, J., concurred.