[L. A. No. 3424. In Bank.—May 26, 1916.]

ROBBINS B. TAYLOR et al., Respondents, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

NEGLIGENCE — PERSONAL INJURIES — COLLISION BETWEEN STREET-CAR AND AUTOMOBILE—PLEADING—SEPARATE COUNTS—NONSUIT ON ONE COUNT.—In an action for damages for personal injuries where the complaint contained two counts, the first charging that the defendant negligently and carelessly propelled its street-car at a high, dangerous, and unsafe rate of speed along the street and upon and against plaintiffs' automobile, and the second being like the first, except that, instead of charging negligence on the part of the defendant, it charged that the defendant willfully, wantonly, and recklessly propelled its street-car at a high and dangerous rate of speed along said street and against said automobile, and that this was done by defendant with knowledge of plaintiff's peril, and the car was so propelled after defendant, knowing of the danger to plaintiff, could, with the exercise of ordinary diligence, have avoided injuring plaintiff, if the second count can be construed as stating a cause of action arising out of willful, wanton, and reck-

less negligence, which is doubtful, and if in that view a nonsuit as to this count should not have been granted, the error was without injury, where everything which could have been claimed for plaintiff under the second count and on that theory of the case was equally well included in and disposed of by the trial, which proceeded to completion on the issues raised by the first count of the complaint and the answer thereto.

ID.—INSTRUCTIONS—LACK OF CARE—FAILURE TO RING BELL.—In such a case the following instruction given by the court was not erroneous in the use of the italicized words: "I charge you that if from the evidence you believe that the said plaintiff saw the defendant's said car while he was still in a place of safety and that by the exercise of ordinary care, such as would have been exercised by a reasonable person under the circumstances, either in applying the brakes on said automobile, or in turning the same, he could have avoided the said collision, then it becomes immaterial in this case whether or not the bell on said car was rung *at any time*, for the *only* purpose of ringing the bell would be to give knowledge of the car's approach, which knowledge the said plaintiff in that event would already have obtained by seeing it." The criticism that this instruction deprived plaintiff of the benefit of the rule requiring the defendant to duly utilize its last clear chance to avoid the collision is answered by the fact that it was not dealing with that phase of the case relating to the doctrine of last clear chance, which was fully discussed in other instructions.

ID. — DUTY OF MOTORMAN — WARNING — PROPER REFUSAL OF INSTRUCTION.—There was no error in refusing to instruct the jury at plaintiff's request that, "It is the duty of a motorman operating an electric street-car in a populous section or much traveled portion of the city, on approaching a street crossing at a rapid rate of speed, to give reasonable warning of his approach," where the court instructed the jury "It is the duty of a motorman while operating an electric street-car in a populous or much used portion of a city to keep a close lookout, and he should use such reasonable precautions at crossings, where his view is obstructed, as the circumstances require, and it is negligence on his part not to so do."

ID.—PROXIMATE CAUSE OF ACCIDENT—SUDDEN FRIGHT—MUTUAL FAULT —ERRONEOUS INSTRUCTION.—An instruction given at the request of the defendant that, "If you find from the evidence that defendant was negligent in the commission or omission of some act, and that thereby said defendant caused some mistake, fright, or loss of presence of mind on the part of said plaintiff, still I instruct you that if the said plaintiff was himself negligent, and by such negligence on his part contributed directly or proximately to a mistake, fright, or loss of presence of mind on his part, and that thereby, by the mutual fault both of said plain-

tiff and said defendant operating and continuing up to the time of the collision, the said accident directly and proximately resulted, then no recovery can be had herein, and your verdict must be for the defendant," is misleading and wrong, in that it attempts to transmute a more remote cause of the accident into a proximate cause and to deprive the plaintiff of the right to be excused from responsibility for acts done by him solely through his condition of fright under the circumstances of sudden danger.·

ID.—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE OF INJURY.—If the plaintiff was guilty of contributory negligence, and if such negligence on his part contributed directly or proximately to the collision, and operated continuously up to the time of the collision, there can be no recovery even though the defendant company or motorman may have been negligent.

ID. — CARE REQUIRED OF MOTORMAN — STOPPING OR RETARDING CAR — LACK OF KNOWLEDGE OF DANGER—PROPER INSTRUCTION.—In such a case an instruction, the point of which was that the motorman was under no obligation to brake or retard his car until such time as he became aware, or in the exercise of ordinary care should have become aware, that the automobile would not succeed in making a turn or stop before coming into dangerous proximity to the car, is addressed to the situation as it existed prior to the time when the motorman became aware, or should have become aware, that the plaintiff had negligently placed himself in a perilous position, and does not purport to cover the doctrine of the last clear chance, which doctrine has no application until after such knowledge is actually gained; and said instruction is not open to the objection that it was prejudicial to plaintiff because the motorman was thereby relieved from the obligation to exercise care until he had knowledge, or in the exercise of reasonable care should have had knowledge, that the plaintiff was not going to be able to avoid the collision, nor does the instruction assume that the motorman need not attempt to stop the car "unless he knew the collision was inevitable."

ID.—DEGREE OF CARE—OPERATION OF STREET-CARS.—The law does not require a higher degree of care of a motorman operating a street-car than is required of other users of public streets, and the reasonable care which is required must be measured by all the conditions, rights, and circumstances of each particular case.

ID.—RIGHTS OF USERS OF STREETS—DUTY TO STOP CAR—WHEN MOTORMAN REQUIRED TO.—A motorman of a street-car is not necessarily obliged to stop his car when he sees a man driving in a vehicle along the line of a railway ahead of the car; but he may continue to run the car in a proper manner until he is conscious of the fact that the driver is unaware or heedless of his danger, and seeing a man drive along the track, the motorman may assume that he would turn aside and out of the way of the car, but he cannot rest on the

assumption so long as to allow his car to reach a point where it would be impossible for him to control his car or give warning in time to prevent injury to the man or vehicle.

ID.—CARE REQUIRED OF MOTORMAN—PROPER MODIFICATION OF INSTRUCTION.—There was no error in omitting from the following instruction offered by plaintiffs the words, "or in the exercise of reasonable care ought to see": "When a motorman sees, or in the exercise of reasonable care ought to see, that an automobile is in a place of peril, either on the tracks or in a place and in motion indicating that it is about to drive on the track or is liable from its position to come in contact with the car, it is the duty of the motorman to use ordinary and reasonable effort to have his car under control either by slackening the speed of his car, or by stopping it altogether, in order to avert a possible injury, and the care and diligence required of the motorman in such an event is measured by the exigencies of the situation and the dangers surrounding at the time, if there are any."

ID.—CONSTRUCTION OF INSTRUCTIONS.—In determining whether a jury have been properly instructed as to the law, the instructions taken as a whole must be considered.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial. B. F. Bledsoe, Judge presiding.

The facts are stated in the opinion of the court.

J. W. McKinley, R. C. Gortner, and W. R. Millar, for Appellant.

Clayton R. Taylor, and Leonard B. Slosson, for Respondents.

LAWLOR, J.—This court granted the application of the defendant corporation for a hearing after decision in the district court of appeal for the second district, which affirmed the order of the superior court granting the plaintiffs' motion for a new trial. The hearing was granted because of the conclusions reached by the district court of appeal in regard to instructions Nos. 7 and 31, which were given to the jury, and which shall be presently considered. The rest of the opinion, which we hereby approve and adopt, is as follows:

"This is an appeal from an order granting plaintiffs' motion for a new trial. The complaint is in two counts and the plaintiffs prosecute this action to recover damages for

personal injuries received by them, resulting from a collision between a street-car of the defendant company and an automobile owned and driven by the plaintiff, Robbins B. Taylor. Further demand is made on account of expenditures incidental to the personal injuries received and on account of damages to the automobile. The first count of the complaint charges that the defendants negligently and carelessly propelled their street-car at a high, dangerous, and unsafe rate of speed along the street and upon and against the automobile. The second count is like the first, except that, instead of charging negligence upon the part of the defendants, it charges that the defendants willfully, wantonly, and recklessly propelled their street-car at a high and dangerous rate of speed along said street and against said automobile, and that this was done by defendants with knowledge of plaintiffs' peril, and the car was so propelled after defendants, knowing of the danger to plaintiffs, could with the exercise of ordinary diligence have avoided injuring plaintiffs. The answer, after denying the several allegations of the complaint in which the plaintiffs' causes of action are set forth, also alleges facts constituting the defense of contributory negligence.

''At the close of the evidence introduced on behalf of the plaintiffs, defendants moved for judgment of nonsuit on the ground that there was no proof establishing or tending to establish any negligence on the part of the defendants, or either of them, and on the further ground that the proof affirmatively established contributory negligence on the part of the plaintiffs directly and proximately contributing to the accident. The motion was granted as to the second cause of action and denied as to the first cause of action. Thereafter, the cause having been submitted to the jury upon the first cause of action, their verdict was returned in favor of the defendants, and judgment was entered accordingly, in favor of the defendant railway company. The defendant Middleton, who was the motorman operating said street-car, was ignored in the judgment, and we shall not further refer to him as a party to the action. The order granting a new trial is final as to Middleton, since he did not appeal therefrom. The notice of appeal is given by and on behalf of 'the defendant.' Counsel on both sides by their briefs have assumed that the defendant referred to in the notice of appeal

is the defendant railway company, and we make the same assumption.

"The motion of plaintiffs for a new trial was based upon several assignments of error covering the order granting the motion for nonsuit and several alleged errors in giving, and others in refusing, instructions to the jury. The order granting the motion for new trial is as follows: 'It is ordered that the said motion be, and it is hereby, granted on the ground of error committed by the court in giving instruction No. 20, requested by defendant.' Since it is our opinion, as hereinafter stated, that the giving of instruction No. 20 did not constitute a proper ground for granting a new trial, it is our duty to also consider the other grounds relied upon by plaintiffs in their motion for a new trial. (*Weisser* v. *Southern Pac. Ry. Co.,* 148 Cal. 427, [7 Ann. Cas. 636, 83 Pac. 439].)

"On July 16, 1911, the plaintiff R. B. Taylor and his wife, the plaintiff Angie L. Taylor, with three other persons, were traveling west on Sunset Boulevard, in the city of Los Angeles, in an automobile belonging to Mr. Taylor, and were approaching Highland Avenue. Mr. Taylor was driving the machine at a speed of a little under fifteen miles per hour. At that time a street-car of the defendant company was coming north on Highland Avenue, approaching Sunset Boulevard. The view of the plaintiffs southward on Highland Avenue was obstructed by buildings and trees until they approached close to the east line of Highland Avenue. R. B. Taylor was 'just a trifle' hard of hearing. The car tracks on Highland Avenue were laid in the street as a double-track system, but for some reason the east track was not then in use, and the street-car was coming north on the left-hand, or westerly, track. Mr. Taylor slowed down when he reached a point about 75 feet from the railroad tracks and listened, but heard nothing and saw nothing. He slowed up the machine and pushed out the main clutch so as to shut off the power, then hit the clutch in and almost immediately, looking to the southwest, saw the car coming up Highland Avenue. He jerked his wheel around, endeavoring to turn his automobile to the north to go up Highland Avenue. Testifying he said: 'I put one foot on the brake, and one foot— threw off the power, but I cannot say whether I did or not. . . . Now, whether I took a second turn or not I cannot tell;

I do not remember; I do not know, but I know it curved around to the right, and I think the left front wheel had either got up close to the track the car was coming on—possibly the front wheel had passed over it a little, but I was running north practically, but at a little angle to the west.' The car struck the automobile and, according to some of the testimony, carried it along Highland Avenue eighty-one feet from the point of collision before the car stopped. . Taylor also testified that when about fifty feet from the east rail of the track on which the street-car was running, he was traveling at about twelve miles an hour; that at that point he jerked his wheel so as to turn his automobile to the right as quickly as he could on seeing the car approaching at 'terrific speed.' . . . 'I do not think I took a second turn on the control wheel; very likely. I cannot explain it any other way.' The street-car was going up-grade. 'I intended to shut off the power; whether I did so or not, I do not know. . . . My foot may have missed it as I went to put it down. It was pretty exciting time.' Again he said: 'The bell had not been rung on that car when I saw it. I am absolutely certain of that; at least, I did not hear it, and I think I would have heard it, because I was watching for it. . . . I will swear I did not hear—I think I did hear it when I got on Sunset Boulevard. I think, under normal conditions, I could have made the turn all right. If I had not got excited, I could have stopped my automobile in fifteen feet at the outside at the rate I was going, if my purpose had been to stop the automobile, or if my foot had struck the—cut off the power—I could not tell; I did the best I could, God knows. If I had not missed the clutch I could have stopped; I did the best I could under the circumstances.' Recalled for further testimony, Taylor said: 'I do not think I could have stopped in twelve or fifteen feet. I do not know; I never tried. I think under normal conditions I could have stopped within fifty feet.'

"Mrs. Taylor testified: 'As we approached Highland Avenue, I saw a car after my husband had commenced to turn the automobile, and it was coming at a terrific speed. . . . I was in the rear seat behind my husband. . . . I did not . hear any bell prior to that time. . . . The bell may have rung, but I did not hear any bell at all.' Several witnesses testified to the fact that no bell was rung on the street-car

as it approached Sunset Boulevard, and that the car was traveling at a very great speed, variously described as 'terrific,' 'fast,' 'very fast,' 'swiftly.'

"It may be doubted whether the second count of the complaint is based upon negligence at all; rather than that, it seems to state a cause of action based upon willful wrong and injury. It was so held in the somewhat similar case of *Tognazzini* v. *Freeman,* 18 Cal. App. 468, [123 Pac. 540], where the action arose out of a collision between automobiles. But if the second count be construed as one stating a cause of action arising out of willful, wanton, and reckless negligence, and if in that view the nonsuit should not have been granted, it follows that the error was without injury, for the reason that everything which could have been claimed for the plaintiffs under that count and on that theory of the case was equally well included in and disposed of by the trial, which proceeded to completion as a trial on the issues raised by the first count of the complaint and the answer thereto. The only wanton, willful, or negligent acts of the defendants which the plaintiffs' evidence tended to show consisted in violations of the duty of the motorman to use due care to avoid injury to the plaintiffs after he discovered that they were or were about to place themselves in a place of danger. With respect to such situation the evidence was received and the jury was fully instructed thereon, and those instructions covered what is known as the doctrine of the 'last clear chance' to avoid impending danger.

"We have stated the fact that the court in granting plaintiffs' motion for a new trial did so specifically on the ground of error committed in giving instruction No. 20, requested by the defendant. This instruction was as follows: 'I charge you that if from the evidence you believe that the said Robbins B. Taylor saw the defendant's said car while he was still in a place of safety and that by the exercise of ordinary care, such as would have been exercised by a reasonable person under the circumstances, either in applying the brakes on said automobile, or in turning the same, he could have avoided the said collision, then it becomes immaterial in this case whether or not the bell on said car was rung at any time, for the only purpose of ringing the bell would be to give knowledge of the car's approach, which knowledge the said Robbins B. Taylor in that event would already have

obtained by seeing it.' Counsel for respondents make no criticism on the wording of this instruction, except the use of the words 'at any time,' and (in the following clause) 'only,' near the end of the sentence. They claim that by the use of these words the jury were prevented from drawing the inference from the testimony, if they were so disposed, 'that the motorman knew of the respondents' danger and could have avoided the collision by stopping the car in the exercise of the ordinary care required of him in such a situation, instead of using the precious seconds in the useless procedure of ringing the bell.' There was some testimony tending to show that after the motorman and the plaintiffs were in sight of each other, and when the collision was impending, the motorman rang his bell. They contend that by reason of the error above noted in instruction No. 20 they were deprived of the benefit of the rule requiring the defendants to duly utilize their last clear chance to avoid the collision. The answer to this contention is that the instruction in question was not dealing with that phase of the case relating to the doctrine of last clear chance; that the doctrine mentioned was fully discussed in other instructions given by the court; and that there is no reasonable probability that the jury would put upon the instruction as stated the strained construction insisted upon by the respondents.

"The plaintiffs offered and the court refused to give the following instruction: 'It is the duty of a motorman operating an electric street-car in a populous section or much traveled portion of the city, on approaching a street crossing at a rapid rate of speed, to give reasonable warning of his approach.' Instruction No. 25, as given by the court, closes as follows: 'It is the duty of a motorman while operating an electric street-car in a populous or much used portion of a city to keep a close lookout, and he should use such reasonable precautions at crossings where his view is obstructed, as the circumstances require, and it is negligence on his part not to so do.' In view of the instruction given, we think that respondents were not injured by the refusal of the instruction asked for by them.

"The objection of respondents to instruction No. 3 manifestly refers to a clerical error which cannot reasonably be supposed to have misled the jury.

"Instruction No. 18, given at request of the defendant, reads as follows: 'If you find from the evidence that defendants were negligent in the commission or omission of some act, and that thereby said defendants caused some mistake, fright, or loss of presence of mind on the part of said Robbins B. Taylor, still I instruct you that if the said Robbins B. Taylor was himself negligent, and by such negligence on his part contributed directly or proximately to a mistake, fright, or loss of presence of mind on his part, and that thereby, by the mutual fault both of said Taylor and said defendants' operating and continuing up to the time of the collision, the said accident directly and proximately resulted, then no recovery can be had herein, and your verdict must be for the defendants.' It is the law, as stated in instruction No. 23, that if the plaintiff was guilty of contributory negligence, 'and if such negligence on his part contributed directly or proximately to the collision, and operated continuously up to the time of the collision, there can be no recovery, even though the defendant company or motorman may have been negligent.' But this instruction No. 18 attempts to transmute a more remote cause of the accident into a proximate cause, and to deprive the plaintiff of the right to be excused from responsibility for acts done by him solely through his condition of fright under the circumstances of sudden danger. In substance, it is a statement that if the mutual negligence of plaintiff and defendant has created a dangerous emergency, and if through sudden fright or loss of presence of mind the plaintiff makes a mistake which prevents him from escaping the danger and injury, then as a necessary legal consequence he shall be responsible for the mistake so made, and this shall be considered as negligence proximately causing the injury, even though his original negligence was not a direct or proximate cause of the injury. The instruction is complicated, misleading, and wrong."

Before discussing instructions Nos. 7 and 31, the suggestion may be added to the comment of the district court of appeal in regard to instruction No. 20, that while the expression "at any time" might, under other circumstances, be improper, still under the testimony here it was not susceptible of misconstruction and did not invade the province of the jury. The testimony of the motorman would place the car about 150 feet from the point of the collision when he

cut off the power. He testifies that it was at this juncture he rang the bell. The version of Mr. Taylor places the car about the same distance away when he first observed it. So that "at any time" is confined to the space intervening between Mr. Taylor's first view of the car and the collision. Assuming, therefore, in favor of the facts as stated in the instruction, the ringing of the bell was immaterial, and had no causal connection with the accident itself. (*Lambert* v. *Southern Pac. R. R. Co.*, 146 Cal. 231, [79 Pac. 873] ; *Starck* v. *Pacific Electric Co.*, ante, p. 277, [156 Pac. 51].) This also disposes of the objection to the word "only" used in connection with the purpose of ringing the bell.

The seventh instruction is, in part, as follows: "If you believe from the evidence that the said automobile was moving at a rate of speed less than 15 miles per hour at the time the said Robbins B. Taylor turned it toward the right, and that the motorman then saw such automobile and the turn that was being given it, and if you further believe from the evidence that an automobile of that class and make could easily, by the exercise of ordinary care, be turned at said speed and at said place without swinging over in the vicinity of or in dangerous proximity to said track on which said car was running, then I instruct you that the said motorman had a right to assume that the said automobile would continue to swing to the right and would not come into dangerous proximity to said car, and said motorman was under no obligation to apply the brakes or to attempt to stop the said car until such time as he became aware, or in the exercise of ordinary care should have become aware, of the fact that said automobile would not succeed in making the said turn or would come in dangerous proximity to said car. If you believe from the evidence that said automobile was about 40 feet from the said track when the said Robbins B. Taylor saw defendant's car, and that said automobile was running at a speed of 15 miles per hour or less, and that an automobile of the said class and make, running at such speed, could be stopped by the exercise of ordinary care before reaching said tracks, or before coming in dangerous proximity thereto, then I instruct you that the motorman had a right to assume that the said automobile, if going at said rate of speed, would be stopped before going upon said track or in dangerous proximity thereto, and was under no obligation to retard or brake

his said car because of the presence of such automobile until he became aware, or in the exercise of ordinary care should have become aware, that said automobile would not stop before getting into dangerous proximity to said track.''

Respondents, relying upon *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15], a case involving the doctrine of the last clear chance, contend that the instruction ''was erroneous and prejudicial to plaintiffs, for the reason that the motorman was thereby relieved from the obligation to exercise care until he had knowledge, or in the exercise of reasonable care should have had knowledge, that the respondents were not going to be able to avoid the collision, whereas the law requires that the motorman should have exercised due care where the circumstances were such as to convey to the mind of a reasonable man a question as to whether respondents would or would not to able to avoid the collision, notwithstanding respondents were placed in that position by their own negligence.'' The district court of appeal, approving of this contention, held that the instruction was erroneous, as ''in substance it required the jury to assume that the motorman need not attempt to stop his car unless he knew the collision was inevitable.''

But we do not think that the instruction purports to cover the doctrine of the last clear chance, for it omits the necessary element of liability. The effect of the application of that doctrine would be to eliminate from consideration all question as to the proximate cause of the perilous situation of the plaintiffs, for if the motorman had actual knowledge of such situation, and by the exercise of ordinary care had a clear opportunity to avoid the accident, but negligently failed to prevent it, the liability of the defendants is established, and such failure is the proximate cause of the injury. (*Thompson* v. *Los Angeles Ry. Co.,* 165 Cal. 748, [134 Pac. 709]; *Tucker* v. *United Railroads of San Francisco,* 171 Cal. 702, [154 Pac. 835]; *Starck* v. *Pacific Electric Co., ante,* p. 277, [156 Pac. 51]; *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15]; 29 Cyc. 530.) The instruction rather applies a general rule of negligence to certain facts, independent of the doctrine of the last clear chance. The point to the instruction is that the motorman was under no obligation to brake or retard his

car until such time as he became aware, or in the exercise of ordinary care should have become aware, that the automobile would not succeed in making the turn or stop before coming into dangerous proximity to the car. In other words, it is addressed to the situation as it existed prior to the time when the motorman became aware, or should have become aware, that the plaintiffs had negligently placed themselves in a perilous position, while the doctrine of the last clear chance has no application until after such knowledge is actually gained. The latter rule was covered by instructions Nos. 3, 9, 19, 34, and 35.

So regarded, instruction No. 7 is in accord with recent authorities in this state on the general principles of negligence as applied to the facts involved in the instruction. It is well settled that the law does not require a higher degree of care of motormen operating street-cars than is required of other users of the public streets, and the reasonable care which is required must be measured by all the conditions, rights, and circumstances of each particular case. (*Scott* v. *San Bernardino Valley Traction Co.*, 152 Cal. 604, [93 Pac. 677].) It was said in *Thompson* v. *Los Angeles Ry. Co.*, 165 Cal. 748, [134 Pac. 709]: "The duty of taking added precautions to avert a collision was not cast upon the motorman by the mere fact that he saw the automobile. It was essential, too, that he should have seen that it was in a position of danger. He had the right to assume that it would stop before coming to the track, and a realization of danger would arise only when it appeared, either that the automobile was being driven in ignorance or disregard of the possibility of meeting an approaching car, or that it had gotten so near the track that it could no longer be stopped. (*Holmes* v. *South Pacific C. Ry. Co.*, 97 Cal. 168, [31 Pac. 834]; *Lambert* v. *Southern Pacific R. Co.*, 146 Cal. 231, 236, [79 Pac. 873].)" This is the general rule, and finds support in *Fujise* v. *Los Angeles Ry. Co.*, 12 Cal. App. 207, 216, [107 Pac. 317], where the court said: "The sum of the adjudicated cases bearing upon the relative rights of street-cars and citizens traveling in vehicles drawn by horses or other animals is that both have a right to use the street, but neither has the exclusive right. The motorman of a street-car is not necessarily obliged to stop his car when he sees a man driving in a vehicle along the line of a railway ahead of the car,

but he may continue to run the car in a proper manner until he is conscious of the fact that the driver is unaware or heedless of his danger. . . . Seeing a man driving along the track, the motorman may assume that he will turn aside and out of the way of the car, but he cannot rest on the assumption so long as to allow his car to reach a point where it will be impossible for him to control his car or give warning in time to prevent injury to the man or vehicle." (Quoted and approved in *McKenna* v. *Omaha & C. B. St. Ry. Co:*, 97 Neb. 281, [149 N. W. 826]. See, also, *Kramm* v. *Stockton Electric Ry. Co.*, 10 Cal. App. 271, [101 Pac. 914] ; *Wood* v. *Los Angeles Ry. Co.*, ante, p. 15, [155 Pac. 68].)

Nor does the instruction assume that the motorman need not attempt to stop his car "unless he knew the collision was inevitable." The distinction between the case of an automobile being in dangerous proximity to an approaching car, and one where the collision is inevitable, is readily apparent, for in the first instance it is conceivable that the collision may still be avoided. We conclude, therefore, that the seventh instruction correctly states the law applicable to the situation to which it is addressed, and was properly given.

The plaintiffs offered the following instruction (No. 31) : "When a motorman sees, or in the exercise of reasonable care ought to see, that an automobile is in a place of peril, either on the tracks or in a place and in motion indicating that it is about to drive on the track or is liable from its position to come in contact with the car, it is the duty of the motorman to use ordinary and reasonable effort to have his car under control, either by slackening the speed of his car or by stopping it altogether, in order to avert a possible injury, and the care and diligence required of the motorman in such an event is measured by the exigencies of the situation and the dangers surrounding at the time, if there are any." The court omitted the words, "or in the exercise of reasonable care ought to see," which omission the respondents claim was error. The court evidently assumed that the instruction, as framed by the plaintiffs, was intended to cover the doctrine of the last clear chance, and of course, in the statement of that rule, the omitted expression would have no place. But even assuming that the instruction does not involve the doctrine of the last clear chance, we cannot

perceive that the elimination of the words constituted error, or, if error, that it was prejudicial to the rights of the plaintiffs. As modified, the instruction correctly states the rule applying to a case where the motorman sees that the automobile is in a place of peril, and could well have been followed by the declaration that if a motorman, in the exercise of ordinary care, should see the perilous situation of an automobile, but does not, he is nevertheless as negligent as if he does see it and fails to perform his duty in the premises. But we think this rule was called to the attention of the jury by other instructions. Instruction No. 8 contains the expression, "if after the said automobile was seen by the said motorman to be in danger of a collision, or should, by the exercise of ordinary care by said motorman, have been seen by him . . . . " Instruction No. 7 also recognizes the rule, and instruction No. 25 touches on the duty of a motorman operating an electric car in a populous city to keep a close lookout. Again, instruction No. 29 declares that it is as obligatory upon the motorman propelling a street-car as it is upon footmen, horsemen, and drivers of automobiles to look and listen as he goes so as to be able to avoid collisions with others exercising the common privilege of using the streets. "In determining whether a jury have been properly instructed as to the law, the instructions, taken as a whole, must be considered." (*Henderson* v. *Los Angeles Traction Co.,* 150 Cal. 689, [89 Pac. 976].) Finally, it is not questioned that the motorman did actually see the approach of the automobile in time to act, and, hence, even if the omission was not supplied by other instructions, it cannot be held that the plaintiffs suffered any prejudice by the modification.

Order affirmed.

Sloss, J., Melvin, J., and Angellotti, C. J., concurred.