[Civ. No. 3300. Third Appellate District.—October 22, 1927.]

LEONARD T. TAYLOR, Appellant, v. JOHN VOLFI, Respondent.

J. Oscar Goldstein and W. H. Hatfield for Appellant.

Irving D. Gibson for Respondent.

FINCH, P. J.—The plaintiff brought this action to recover damages suffered in an automobile collision, alleged to have been caused by defendant's negligence. The answer denies the allegations of negligence and alleges that the plaintiff was guilty of contributory negligence. The defendant also filed a cross-complaint for the recovery of damages to his automobile, alleged to have been caused by the plaintiff's negligence. The jury returned a verdict in favor of the plaintiff for damages in the sum of $6,139 and against the defendant on his cross-complaint. Judgment was entered accordingly. The defendant thereafter moved the court for a new trial and the motion was granted on the "ground of the insufficiency of the evidence to sustain or justify the verdict." This appeal is from the order granting the motion.

The collision occurred at the intersection of Thirty-sixth Street and Fourth Avenue, in the city of Sacramento. Sacramento Boulevard, running from northwest to southeast, includes within its boundary lines the northeast corner of such intersection. At the time of the collision the plaintiff

was driving his automobile north along Thirty-sixth Street and the defendant was driving his machine, a half-ton Ford delivery truck, east on Fourth Avenue.

The defendant testified that he was traveling fifteen to seventeen miles an hour; that he was looking to the left at an automobile on Sacramento Boulevard and did not see plaintiff's automobile until he was within three or four feet of it, "or a little bit more"; and that he "did not turn to the right side to see if there was any car at the right." It is clear that such conduct on the part of the defendant constituted negligence.

The plaintiff testified that he had reached about the south curb line of Fourth Avenue, when he looked to the left and "saw a machine (that of defendant) coming up this street . . . about ten feet outside of the intersection and he (defendant) was looking around; I started in blowing my horn. I supposed he would see me. . . . He did not look at all until he struck me. . . . I was going not any faster than six miles an hour. . . . The motor was cold and would not pick up. I just got in the high gear. . . . He was looking around to his left, around back, like he was looking in his machine. . . . He was traveling . . . twenty-five to thirty miles an hour. . . . Q. Why didn't you stop? A. I thought I had plenty of time to go in front when I first saw him. . . . If I could have speeded up my motor I would have got across. I could not speed it up on account of it being cold. . . . I thought the man would look around and see me. . . . He did not look around, . . . never looked around at all. . . . Q. Did he slacken up any? A. He did not. . . . He was looking right around back into the machine. Q. Could you see what he had there inside of his machine? A. Looked to me like he was working something back. . . . I did not realize but what he was going to stop. I had plenty of time to stop—plenty of time when I saw him ten feet below the crossing. . . . Q. You could have stopped your car coming in here at six miles an hour? A. I could have stopped, yes. . . . Q. Do I understand your testimony now, that Mr. Volfi was looking around the whole time, from the time you first saw him until this accident happened? A. Yes, sir. Q. Did not turn his head at all? A. No, sir."

In appellant's opening brief it is said: "The true test of the question as to whether the trial court was correct in

granting the defendant's motion for new trial could be reached by determining the question as to whether . . . the trial court, . . . upon exactly the same evidence, . . . could grant a motion for a nonsuit.'' The distinction between the power of the trial court to grant a motion for a new trial on the ground of insufficiency of the evidence and that to grant a motion for a nonsuit or a directed verdict has been pointed out so often that citation of authorities on the question is deemed unnecessary. The trial court has the power to grant a motion for a new trial, notwithstanding there may be a substantial conflict in the evidence upon every material issue, if, in the opinion of the court, the verdict is contrary to the weight of the evidence, but such court is not authorized to grant a motion for a nonsuit or to direct a verdict for the defendant unless, as a matter of law, the evidence is insufficient to support a verdict for the plaintiff. It is clear in this case that the defendant was guilty of negligence and that his negligence continued up to the very instant of the collision. A justifiable, though not a necessary inference from the plaintiff's testimony is that he did not exercise ordinary care to avoid the collision, in failing to stop, after becoming aware of the probability thereof through the continuing negligence of the defendant. As said by appellant in another part of his brief, ''Whether plaintiff was guilty of contributory negligence, or whether any acts or omissions on his part, caused or directly contributed to the accident, . . . were questions of fact peculiarly to be determined by the jury.'' In passing on a motion for a new trial, however, the trial court is not bound by the implied findings of the jury if there is sufficient evidence to sustain contrary findings.

 Appellant contends that the defendant was guilty of gross negligence and that, in such a case, contributory negligence is not a defense. ''It makes no difference in the analysis of a defense based upon the contributory negligence of a person injured or killed whether the negligence of the defendant was gross, ordinary, or slight.'' (*Tucker* v. *United Railroads,* 171 Cal. 702, 704 [154 Pac. 835].)

The order is affirmed.

Burroughs, J., *pro tem.,* and Plummer, J., concurred.