[L. A. No. 3143. Department One.—July 26, 1913.]

ELLEN T. THOMPSON, Respondent, v. LOS ANGELES & SAN DIEGO BEACH RAILWAY COMPANY (a Corporation), Appellant.

Negligence—Collision Between Automobile and Motor Car of Street-railway—Failure to Give Warning Signals—Evidence. In an action by one who had been a passenger for hire in an automobile to recover damages for personal injuries resulting from a collision with a motor car of a street-railway, evidence of the persons riding in the automobile, who were in a position to hear warning signals, by bell or whistle, of the approach of the motor car, had they been given, that they heard no such signals, is sufficient to sustain a finding by the jury that no warning was given, notwithstanding the positive testimony of other witnesses to the contrary.

Id.—Passenger for Hire in Automobile—Contributory Negligence of Chauffeur.—A passenger for hire in an automobile, the chauffeur of which was not employed by her, and who did not undertake to direct the manner in which the automobile should be operated, is not precluded, by reason of the contributory negligence of the chauffeur, from maintaining an action to recover damages for personal injuries resulting from a collision with a motor car of a street-railway, which was being negligently operated by its employees at the time of the accident.

Id.—Degree of Care Required of Passenger for Hire in Reference to Management of Vehicle.—A passenger in a vehicle operated by another is bound to exercise ordinary care for his own safety, and if he is aware that the operator is carelessly rushing into danger, it may be incumbent upon him to take proper steps for his own safety. Under the circumstances of the present case, it is held, that it cannot be said, as matter of law, that the plaintiff was negligent in failing to call the attention of the chauffeur to the danger of the situation, nor was the evidence of his incompetency or inattentiveness so manifest as to impose on her any greater obligation of watchfulness than that which would otherwise have been hers.

Id.—Application of Doctrine of Last Clear Chance—Defendant must have Known of Plaintiff's Peril.—In determining the question of liability for a negligent act, the "last clear chance" doctrine is only applicable to a defendant who was actually aware of the fact that the plaintiff had negligently put himself in a position of danger; it does not apply to the case of a defendant who would have discovered the plaintiff's peril but for remissness on his

part. Under the circumstances of this case, an instruction which announced the contrary doctrine must be deemed prejudicial.

ID.—AUTOMOBILE APPROACHING STREET-RAILWAY CROSSING—CARE REQUIRED OF MOTORMAN TO AVERT COLLISION—ASSUMPTION THAT AUTOMOBILE WOULD STOP.—Where a motor car on a street-railway and an automobile on a public highway were going in the same direction toward a place where the highway crossed the railway, the duty of taking added precautions to avert a collision was not cast upon the motorman by the mere fact that he saw the automobile when at a distance of two hundred and fifty feet from the crossing. He had the right then to assume that the automobile would stop before coming to the track, and a realization of danger by the motorman, which would render the railway company liable for negligence under the doctrine of the "last clear chance," would arise only when it appeared either that the automobile was being driven in ignorance or disregard of the possibility of meeting the approaching car, or that it had gotten so near the track that it could no longer be stopped.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial. T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

Leovy & Leovy, Geo. J. Leovy, and T. M. Leovy, for Appellant.

Leroy A. Wright, and Charles P. Pritchard, for Respondent.

SLOSS, J.—In this action brought to recover damages for personal injuries alleged to have been sustained through the negligence of the defendant, a verdict for three thousand dollars was returned in favor of plaintiff. The defendant appeals from the ensuing judgment and from an order denying its motion for a new trial.

The defendant owns and operates a line of railway from the center of the more densely populated part of the city of San Diego to La Jolla, a distance of some fourteen miles. The entire line is within the city limits of San Diego. About four miles from the starting point a wagon-road crosses the track near the settlement known as Old Town. On the nine-

teenth day of July, 1909, the plaintiff was one of six passengers who were riding in an automobile run for hire, she and those with her having engaged passage for a sight seeing tour to and from certain points of interest in and about San Diego. The automobile was proceeding northerly from the center of the city toward La Jolla. As it came upon the crossing above referred to, near Old Town, it was struck by the defendant's car which was proceeding northerly on the track toward La Jolla. The impact overturned the automobile, and the plaintiff suffered the injuries which form the basis of this action.

The defendant's car was about fifty-five feet in length, and was operated by means of a gasoline motor. The complaint alleged that the collision was caused by the defendant's careless and negligent management and operation of the said motor car. The answer denied this allegation and set up contributory negligence on plaintiff's part.

The appellant claims that the court below erred in rulings on the admission and rejection of evidence, in denying its motion for a nonsuit, as well as in instructing the jury, and urges, further, that the findings, implied in the general verdict, that the defendant was negligent and that the plaintiff was not, are without support in the evidence. For a proper understanding of the points made, so far as they will require discussion here, it seems well to begin with the consideration of the evidence and its sufficiency to sustain the verdict.

At the point where the collision occurred, the general direction of the defendant's track was northerly. Before it crossed the wagon-road, the track entered upon a slight curve to the west. Beginning about four or five hundred feet from the crossing, the wagon-road ran approximately parallel to the track, at a distance of from one hundred to one hundred and fifty feet easterly therefrom. At about one hundred and fifty feet from the crossing, the wagon-road turned northwesterly, and continued in this direction until it crossed the track at an oblique angle. The track passed through a cut south of the crossing, but this cut ended some three hundred and fifty feet before the crossing was reached. The track was on a downgrade for a distance of eight hundred feet or thereabouts until it came to some thirty-five feet from the crossing, when it became level and so continued until after pass-

ing the wagon-road.  For the last three hundred feet of this distance the fall is one-half foot in the hundred, making a one-half per cent grade.  The wagon-road, too, falls slightly until it comes to within about one hundred feet of the crossing, when, after running level for a short distance, it rises a trifle over one foot in the last fifty feet to the track crossing.  From the time the track emerges from the cut until the crossing is reached, a car upon the track is open to the view of any one upon the parallel stretch of road, although the track itself cannot be seen.  So, too, a vehicle on this part of the road may readily be seen from the car upon the track opposite.

Upon the day in question, the automobile and the motor car were proceeding northerly upon their respective paths.  The automobile was running down hill at a rate of ten or twelve miles an hour, and was a little ahead of the motor car.  The latter was going at about the same rate, or perhaps somewhat faster, the car being permitted to "coast," or run by gravity, no power being applied.  At the lowest point in the wagon-road was a stretch of sand.  The chauffeur of the automobile, which had also been "coasting," put on his power to carry him across the sand.  There still remained a level piece, and here the chauffeur threw out his clutch, and was carried by momentum, gradually slowing down, until he reached the foot of the last rise leading to the track.  At this point, he again threw in his clutch, applying the power, and thus went up the ascent and on to the track, where the automobile was struck by the approaching motor car.  According to the testimony of the chauffeur, and of the surviving five of his six passengers, not one of them had seen the motor car or had heard any bell or whistle giving warning of its approach.  On the other hand a number of witnesses, who were not impeached in any way, testified that both bell and whistle had been sounded repeatedly as the motor car was approaching the crossing.  The motorman of defendant's car saw the automobile when it was two hundred and fifty feet from the crossing.  He testified that he put a little pressure on the air-brakes at that point.  The automobile, he said, continued at the same speed until it came to the rise near the crossing.  It then checked its speed, leading him to think it was going to stop, but it started up again and kept right on to the track.

When it started up at the point referred to, the motorman reversed his engine, and put on his emergency brake. He was then only fifty feet from the crossing, and the car could not be stopped in that distance. It is true that there was some impeachment of the motorman's testimony that he had put on his brakes when he was fifty feet from the crossing. Testimony was given to show that, on a prior occasion, he had said that he put on the emergency brake when his car hit the automobile. But his former statements had no force as independent evidence of what he had actually done at the time of the accident. They could have no effect beyond that of neutralizing what he said at the trial. Since the burden of proving negligence was on the plaintiff, she was bound to prove that the motorman failed to apply his brakes when he was fifty feet from the crossing, if she relied on such failure as an element of negligence.

But we think it must be held that there was enough in the evidence to justify the jury in finding that the motorman was negligent in not giving proper warning, by bell or whistle, of his approach. It is true that the only evidence that he did not give such warning was negative, consisting of the statements of the people in the automobile that they heard no signal. But, if they were so situated, as they undoubtedly were, as to have been able to hear a bell or whistle sounded from the motor car, their failure to hear is some evidence that no such signal was given. (1 Wigmore on Evidence, sec. 664; *Stotler* v. *Chicago & A. Ry. Co.,* 200 Mo. 107, [98 S. W. 509] ; *Cotton* v. *Willmar etc. Ry. Co.,* 99 Minn. 366, [116 Am. St. Rep. 422, 9 Ann. Cas. 935, 8 L. R. A. (N. S.), 643, 109 N. W. 835].) That there was positive testimony to the contrary does not conclusively establish that a warning was given. It creates merely a conflict of testimony, which is finally resolved, so far as this court is concerned, by the verdict of the jury. This circumstance alone supports the finding of negligence.

The respondent also claims that the evidence justified a conclusion that the motorman was negligent in approaching the crossing at an unduly high rate of speed. For reasons to be stated, a reversal is necessary, and, as the evidence may be somewhat different upon a new trial, nothing would be gained by a more prolonged discussion of the sufficiency of the evi-

dence bearing upon the allegations of defendant's negligence, except in so far as we shall hereafter have occasion to refer to one aspect of the case in considering an instruction.

That the chauffeur operating the automobile was guilty of negligence in running upon the track along which the motor car was approaching in plain view is too clear for discussion, and is, indeed, conceded by the respondent. But the fact that he was negligent does not, of course, conclude the plaintiff on the issue of her contributory negligence. She was a passenger for hire. The chauffeur was not employed by her, and she did not undertake to direct the manner in which the automobile should be operated. The negligence of the chauffeur is not to be imputed to her. *(Little* v. *Hackett,* 116 U. S. 366, [29 L. Ed. 652, 6 Sup. Ct. Rep. 391]; *Bresee* v. *Los Angeles Traction Co.,* 149 Cal. 131, [5 L. R. A. (N. S.) 1059, 85 Pac. 152]; *Fujise* v. *Los Angeles Ry. Co.,* 12 Cal. App. 207, 218, [107 Pac. 317].) It is, of course, true, that a passenger in a vehicle operated by another is bound to exercise ordinary care for his own safety. If such passenger is aware that the operator is carelessly rushing into danger, it may be incumbent upon him to take proper steps for his own safety. But here there was evidence that Mrs. Thompson was a stranger in San Diego, that she did not know that the road crossed a railway track, and that she was not aware of the approaching car. Under these circumstances it certainly cannot be said, as matter of law, that she was negligent in failing to call the attention of the chauffeur to the danger of the situation. Nor was the evidence such as to compel the conclusion that the chauffeur was manifestly incompetent and inattentive to his duties to such a degree as to impose upon the plaintiff any greater obligation of watchfulness than that which would otherwise have been hers. On this point of the chauffeur's apparent competency, it may fairly be said that the jury might, on the evidence, have found either way.

It follows that the court did not err in denying the motion for a nonsuit.

The court charged the jury with respect to the questions of negligence and contributory negligence. In addition to instructions covering the ordinary aspects of these questions, it undertook to instruct upon the "last clear chance" rule. This left it open to the jury to return a verdict for the plain-

CLXV Cal.—48

tiff if they should find that she had herself been negligent, but that her injury had been caused by a subsequent and preventable act of negligence committed by the defendant after knowledge on its part that plaintiff had negligently placed herself in a position of danger. In this connection the court instructed the jury as follows: "I instruct you that one having knowledge of the dangerous situation of another, and having a clear opportunity by the exercise of proper care to avoid injuring another, must do so, notwithstanding the latter has placed himself in such situation of danger by his own negligence. If therefore you should find from the evidence that the motorman of defendant's car which collided with the automobile, saw *or by the exercise of reasonable care and prudence should have seen the situation in which plaintiff was before the collision,* and had the opportunity, by the exercise of proper care to avoid the collision and avoid injuring the plaintiff and failed to exercise such care or to do what reasonable prudence would dictate he should have done to avoid injuring the plaintiff, the defendant is liable and your verdict must be for the plaintiff." This instruction is manifestly erroneous, in so far as it attempts to apply the last clear chance doctrine to a defendant who is not actually aware of the fact that plaintiff has negligently put himself in a position of danger. The italicized portion of the quotation declares a proposition that has been repeatedly repudiated by the decisions of this court. In *Herbert* v. *Southern Pacific Co.,* 121 Cal. 227, [53 Pac. 651], the court said that the liability under the doctrine in question "is based upon the fact that defendant did actually know of the danger—not upon the proposition that he would have discovered the peril of plaintiff but for remissness on his part. Under this rule a defendant is not liable because he ought to have known." The same views are expressed in *Wahlgren* v. *Market St. Ry. Co.,* 132 Cal. 656, [62 Pac. 308, 64 Pac. 993], and *Bennichsen* v. *Market St. Ry. Co.,* 149 Cal. 18, [84 Pac. 420]. (See, also, *Esrey* v. *Southern Pacific Co.,* 103 Cal. 541, [37 Pac. 500].)

The importance of this instruction becomes very apparent upon a careful reading of the record. The evidence of negligence on the part of the defendant was, at best, not strong. It consisted in large part of the somewhat unsatisfactory

showing that proper warnings of approach had not been given. It is highly probable, therefore, that the jury concluded that the fault of the motorman lay in his failure to sound warning or to control his car after the persons in the automobile had been put in a position of danger. And the instruction authorized the jury to find for the plaintiff in such event, although the negligence of plaintiff herself had contributed to her being in such perilous position, and although the motorman was not in fact aware that she was so placed. In other words, the instruction authorized a verdict against the defendant in the event, which was by no means improbable under the evidence, that the jury should think that the motorman, from the moment he saw the automobile at a distance of two hundred and fifty feet from the crossing, ought to have realized (whether or not he did in fact) that the persons in the machine were unaware of his approach and were going to keep right on to the crossing. The respondent virtually concedes the incorrectness of the instruction in the particular to which we have adverted. She contends, however, that the error is harmless. It was admitted that the motorman had in fact seen the automobile when it was two hundred and fifty feet from the track. In this state of facts, the jury could not, it is claimed, have been misled to defendant's prejudice by an instruction based on the hypothesis that the motorman should have seen. But this does not meet the objection. The duty of taking added precautions to avert a collision was not cast upon the motorman by the mere fact that he saw the automobile. It was essential, too, that he should have seen that it was in a position of danger. He had the right to assume that it would stop before coming to the track, and a realization of danger would arise only when it appeared, either that the automobile was being driven in ignorance or disregard of the possibility of meeting an approaching car, or that it had gotten so near the track that it could no longer be stopped. (*Holmes* v. *Southern Pacific C. Ry. Co.*, 97 Cal. 168, [31 Pac. 834]; *Lambert* v. *Southern Pacific Co.*, 146 Cal. 231, 236, [79 Pac. 873].) It is quite consistent with the evidence, if, indeed, it is not established to a reasonable certainty, that while the motorman saw the automobile, he did not believe, until it started up on the last rise to the track, that it would not stop to let him pass.

The erroneous instruction permitted the jury to draw the inference that he should have seen, at an earlier point of time, that a collision was imminent, and, if they so inferred, to find for the plaintiff, even though they should find her to have been guilty of negligence contributing to the injury. We see no escape from the conclusion that the error is one of such importance as to require the ordering of a new trial.

Other points made may be briefly noticed. Instruction 8, criticised by appellant, should, we think, not be repeated in its present form upon another trial. The language is confusing, and is open to a construction which makes the declarations contained therein misleading, if not directly erroneous. Instruction 14, too, is stated in too broad a way. No doubt one in charge of a railroad train approaching a wagon-road crossing is bound to use the care appropriate to the circumstances, as is one approaching on the wagon-road. But from the nature of the case, the precautions required of the one are different from those required of the other. Instruction 14 seems to put the two on an equal footing with respect to the precautions to be observed.

There are no other points that seem to require specific notice at this time. Of the complaints made with regard to rulings on the admission or rejection of evidence, it is sufficient to say that if error was committed in any instance, it was not of sufficient importance to warrant a reversal. It is likely that most of the points raised in this connection will not present themselves upon another trial.

The judgment and the order appealed from are reversed.

Shaw, J., and Angellotti, J., concurred.