[Civ. No. 3135.   Third Appellate District.—July 7, 1926.]

GEORGE B. HABER et al., Appellants, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

[1] NEGLIGENCE—COLLISION BETWEEN AUTOMOBILE AND ELECTRIC TRAIN —OPERATION OF TRAIN—INSTRUCTIONS.—In an action for damages for personal injuries sustained by plaintiffs while riding in an automobile which was struck by defendant's electric train while attempting to cross defendant's street railway track, error cannot be predicated upon the refusal of the trial court to give plaintiffs' requested instruction declaring it was the duty of defendant to propel its electric car in a careful manner and with due regard for the safety and convenience of pedestrians and vehicles upon the street, and that a failure to do so was negligence, where the substance of such instruction was fully set forth in other instructions given, and where the requested instruction was faulty in that it contained an implication of negligence on the part of defendant.

[2] ID.—LAST CLEAR CHANCE—OMISSION OF ELEMENTS FROM REQUESTED INSTRUCTION—EVIDENCE.—In such action, in the absence of any testimony showing the distance in which defendant's train could be stopped, or that anything was left undone which could

---

2.  See 19 **Cal. Jur** 761.

have been done by the motorman, any instruction on the doctrine of last clear chance could not have materially affected the verdict in favor of defendant; but assuming that an instruction on the subject of last clear chance might properly have been given, the trial court properly refused plaintiffs' requested instruction purporting to set forth that doctrine, where there was an entire omission therefrom of the element of the ability of plaintiffs to extricate themselves from the impending peril, and of the necessary element that the failure to take advantage of the so-called last clear chance was the proximate cause of the injury.

[3] ID. — ELEMENTS OF LAST CLEAR CHANCE — INSTRUCTIONS. — The elements entering into the last clear chance doctrine are: whether or not the plaintiff's danger was perceived by defendant in time to enable him, by ordinary care, to have avoided injuring plaintiff; whether, after discovering plaintiff's situation of peril, defendant did exercise ordinary care, or did neglect to do some act within his power, which, if done, would have prevented the injury; whether or not both parties were guilty of concurrent negligence continuing to the time of the accident and each contributing thereto; whether or not the defendant knew of the danger and could have avoided it against the plaintiff who did not in fact know thereof; and whether plaintiff was unable, by the exercise of ordinary care, to extricate himself from the impending peril.

[4] ID. — CONTROL OF AUTOMOBILE — IMPUTATION OF NEGLIGENCE TO PASSENGERS — INSTRUCTIONS. — In this action for damages for personal injuries sustained by plaintiffs while riding in an automobile which was struck by defendant's electric train while attempting to cross defendant's street railway track, no error was committed by the trial court in refusing to give an instruction requested by plaintiffs, a portion of which, in view of the evidence, was erroneous in stating that "in this case there is no evidence which warrants the jury in the conclusion that plaintiffs, or either of them, were in any degree in the control of the operation of the automobile in which they were riding at the time of the accident," and where all proper portions of such requested instruction, dealing with the question of imputation of the automobile driver's negligence to passengers, were included in instructions actually given.

[5] ID. — OPERATION OF STREET-CARS — SPEED — ANTICIPATION BY AUTOMOBILE DRIVERS — INSTRUCTIONS. — In such action the trial court properly instructed the jury that "plaintiffs were required to expect and anticipate, to the extent that a prudent person of their age and experience and knowledge would anticipate, that defendant would operate its cars on its line at the usual and customary

---

3.  See 19 Cal. Jur. 653–656; 20 R. C. L. 141–143.

rate of speed in said locality; and defendant, if operating lawfully and in the usual manner, had a right to expect (until it had actual knowledge to the contrary) that any automobile driver would anticipate and look out for such speed of operation of its cars and trains."

[6] Id.—Visibility of Train to Driver of Automobile—Assumption of Motorman — Instructions. — In such action the trial court properly instructed the jury that "if you believe from the evidence, that the approach of defendant's car was visible to anyone in plaintiffs' position exercising ordinary care, then said motorman had a right to assume that the approach of his car would be visible to plaintiffs driving said automobile toward said crossing, and had a right to expect that the approach of his car would be heeded by plaintiffs under such circumstances, and that plaintiffs would not attempt to cross so close in front of said car as to make a collision therewith unavoidable. And the motorman had a right to operate his car forward under such assumption and to rely thereon until he had actual knowledge that an attempt would be made to drive said automobile across said track in front of his car."

[7] Id. — Automobile Approaching Street-car Track — Reciprocal Duties of Driver and Motorman — Yielding Right of Way. — The operator of a train or street-car has the right to assume that one approaching the track is in possession of his normal senses and that he is able to and will take care of himself, and while it is said that the duties of a motorman and an automobile driver are reciprocal, yet, from the fact that the street-car is confined to its tracks, it is the duty of the automobile driver to give way to its clear passage.

[8] Id. — Duty to Observe Approach of Street-car — Last Clear Chance.—It is the duty of the driver of an automobile to observe the approach of a street-car and to use ordinary care to avoid a collision with it, and when there is a failure to do so, in order that recovery be had and before the doctrine of last clear chance applies, it must be shown that the motorman actually observed the peril in time to avoid the injury.

[9] Id.—Proximate Cause—Instructions—Evidence.—In this action for damages for personal injuries sustained by plaintiffs while riding in an automobile which was struck by defendant's electric train while attempting to cross defendant's street railway track, where the trial court gave an instruction that "if the accident was caused solely and proximately by either the negligence of the driver of the automobile in which the plaintiffs were riding, or

6.   See 19 Cal. Jur. 654.

7.   See 23 Cal. Jur. 884; 25 R. C. L. 1262.

8.   See 23 Cal. Jur. 881.

on the part of the [another] automobile driver blocking him from coming off of the track, the plaintiff cannot recover," the reference to a possible third party contained in such instruction did not mislead the jury to the prejudice of plaintiffs, where the evidence showed that the jury was fully warranted in finding that the sole and proximate cause of the injuries to plaintiffs was the careless and reckless and negligent driving of the automobile in which they were riding.

---

(1) 36 **Cyc.**, p. 1605, n. 30, p. 1637, n. 99, p. 1638, n. 10; 38 **Cyc.**, p. 1657, n. 53, p. 1661, n. 66, p. 1717, n. 24.   (2) 4 **C. J.**, p. 1048, n. 76; 38 **Cyc.**, p. 1633, n. 12.   (3) 29 **Cyc.**, p. 530, n. 15, p 531, n. 17, 18, 20; 36 **Cyc.**, p. 1505, n. 81, p. 1565, n. 3, p. 1567, n. 8. (4) 36 **Cyc.**, p. 1638, n. 5; 38 **Cyc.**, p. 1650, n. 54.   (5, 6) 36 **Cyc.**, p. 1517, n. 52, 55.   (7) 36 **Cyc.**, p. 1495, n. 15, p. 1496, n. 17.   (8) 36 **Cyc.**, p. 1509, n. 98, p. 1553, n. 38, 39.   (9) 4 **C. J.**, p. 1173, n. 70.

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor R. McLucas, Judge. Affirmed.

The facts are stated in the opinion of the court.

Bachman & LePage for Appellants.

Frank Karr, E. E. Morris and C. W. Cornell for Respondent.

PLUMMER, J.—The three cases set forth in the title were all tried upon the same evidence before the same jury and are brought before us upon appeal on one transcript and one set of briefs. The defendant had judgment in all three of the cases and the plaintiffs in the respective cases appeal. These actions are based on injuries sustained while the plaintiffs were riding in an automobile in a southerly direction on a certain street in the city of Los Angeles, known as and called South Wilton Street. This street is intersected by a certain other street running easterly and westerly in said city, known as and called West Sixteenth Street, upon which the defendant owned and operated a double-track railway. The complaints set forth two causes of action: 1. That as the plaintiffs were proceeding in an orderly and careful manner in a southerly direction and were attempting to cross the tracks belonging to the de-

fendant and that when they got upon said tracks they were blocked thereon by traffic congestion, and while so blocked thereon, the defendant carelessly, negligently, and recklessly managed, operated, and controlled a certain three-car train then being operated in an easterly direction on said Sixteenth Street, and in consequence of said manner of operation, ran said train against the automobile in which plaintiffs then and there were, with such force and violence that plaintiffs suffered injuries, etc.; the second cause of action alleges that while the automobile in which the plaintiffs were seated was standing in a dangerous place across defendant's tracks and were unable to move in any direction, that the defendant perceived, or in the exercise of ordinary care should have perceived the situation and danger of plaintiffs, and that defendant, by exercising ordinary care, might have stopped said train and avoided a collision with said automobile, but that defendant so carelessly, recklessly, and negligently managed, controlled, and operated its said three-car train that in consequence thereof said train was run against the automobile, etc., injuring the plaintiffs. The facts show that the automobile owned by George B. Haber was at the time of the collision being driven and operated by George M. Haber, a son of George B. Haber; that in the automobile there were also Anna E. Haber, wife of said George B. Haber, Mrs. A. J. Petri, Louise and Jeannette Haber, daughters of Mr. and Mrs. Haber. The automobile was and for some minutes preceding the accident had been proceeding in a southerly direction on South Wilton Street, traveling at a speed estimated by the driver at twenty miles an hour; by other witnesses at a considerably higher rate of speed. The driver of the automobile, George M. Haber, stated the speed at twenty miles an hour just before entering the intersection of Wilton and Sixteenth Streets; that upon entering the intersection he slowed down to fifteen miles an hour; that before he started to cross the street he looked both ways; that as he looked toward the west, which was on his right, he saw the defendant's train; that the train was a short block away; that it was so far away he did not think there would be any danger of being hit; that when he entered upon the north line of the defendant's railway the automobile was being driven at about

12 miles an hour, and, further, that the train at that time he estimated to be 100 feet away; that he proceeded across the north line of tracks and on to the south line of the railway upon which the defendant's train was traveling in an easterly direction. The north line of rails was called the "west-bound track," the south line is called the "east-bound" track. That when he actually got on the tracks the train was about forty feet away; that at this instant of time, an automobile being driven in an easterly direction, shot in front of him, necessitating his slowing down to about five miles per hour to avoid colliding with such automobile. His testimony is as follows in this particular:

"When I got on the tracks that this train was running on, when the front wheels got on this track the train was probably forty feet off at that. I couldn't give any intimation that I was going to slow down to the motorman. I didn't know anything about this auto that was going to cut me off until I got just a few feet farther. When I was actually on the tracks and the train was forty feet or less I did something that I myself had not expected to do, that is, I slowed down. That auto that passed in front of me was about five feet from me when I first saw it. It was coming from the west on Sixteenth street. It was coming so fast I did not see it. About all I saw was a black streak shot in front of me. When the black streak shot in front of me, the train was so close that I couldn't get off before the train hit me. I was going possibly ten miles an hour, that is, when I was on the tracks; I slowed down just enough to let the auto pass. When I slowed down on the tracks the street car was running about fifteen miles an hour. I am able to judge that if I had not slowed down on the track and I had continued at the speed that I was making in crossing the tracks, and the street car had continued at the speed it was making, that I would have gotten across in plenty of time. The automobile that passed in front of me was going at about thirty-eight miles per hour. I first saw it when it was twenty or twenty-five feet away."

The testimony shows that there was a vacant lot on the northwest intersection of Wilton and Sixteenth Streets, so that the occupants of the automobile had a clear view of the approaching three cars and also that the motorman of

the train had a clear view of the automobile. There is nothing in the testimony showing that either the train or the automobile was not equipped with proper appliances for managing, controlling, and stopping the same, nor is there anything in the testimony showing the distance required to stop either the train or the automobile at the place where the collision occurred, or under like conditions then prevailing. All of these matters appear to have been entirely omitted from the case. George B. Haber, the father of George M. Haber, testified that his son was driving the automobile; that he occupied the front seat with him; that he first saw the train when the automobile was seventy-five feet north of the north curb line of Sixteenth Street; at that time the automobile was running between eighteen and twenty miles an hour; that he would estimate the distance of the train from the intersection at 300 feet; that when they got upon the east-bound track, or nearly to the east-bound track, an automobile came from the west and blocked their way; that at that time he would judge the train was 100 feet away and that the train had slowed up some; that before they could get off the east-bound track, after the automobile had passed on, they were struck by the defendant's train; that he did not hear any bell and that he did not need any bell to tell him that the train was coming, for he saw it. On cross-examination this witness testified that when he first saw the speeding automobile coming across the intersection he thought the train was some 150 feet away; also, that when they were at the north curb line of Sixteenth Street, the train was distant some 250 feet. This witness further testified that when he got on the west-bound track he did not know how close the train was; that he was relying on his son to watch out for such things; that he allowed him to drive the car on the day in question and authorized his son to drive the car and take the witness and his wife in the same; that he had the right to direct where the car should go, but that he did not exercise such authority.

Miss Louise Haber testified that she saw the train at least 100 feet away and that at such point it slowed up some; that the car in which they were riding slowed up some when they were entering Sixteenth Street; that they

slowed down just before entering on the tracks and started up again and when the other automobile shot in front of them they slowed down and the train hit them. "I think we were just about on the track the train was on when the other automobile dashed by."

Amos Peterson, a witness called for the plaintiff, testified that he was coming west on Sixteenth Street; that when he first saw the plaintiffs' car he was 100 or 200 feet east of it, that he had slowed up for the intersection. "I saw the train coming and heard the noise of the brakes and when I looked around the train was practically on top of them. Plaintiffs' automobile was about across the track. When I first saw the train it was 300 or 400 feet away; when the automobile got on the track, I should judge it was fifty, maybe 100 feet away, that is, when they put on the brakes. I should judge the train was making about twenty miles an hour; I should judge the automobile had slowed down to either three to five miles per hour; the train went in my judgment from forty-five to fifty feet after it hit the automobile; I did not see the speeding automobile that went by."

J. C. Page, a witness called by the plaintiff, testified that he was at the intersection of Wilton and Sixteenth Streets at the time of the accident; that just preceding the collision, he was traveling easterly on Sixteenth Street; that he was driving a Ford car; that the three-car Pacific Electric Railway train came along on Sixteenth Street running easterly and "caught up with me at a place called Arlington." At Arlington both he and the train slowed down; that after Arlington he speeded up some; that an automobile passed by him running about forty miles an hour; that he speeded up his automobile to twenty or twenty-five miles per hour; that the train was coming faster than he; he would judge about thirty miles an hour; that he first heard the train make a sound indicating that they were turning on the air or turning off the power at a point about 250 feet from Wilton Street; that after that the train picked up some speed; he would judge about thirty miles an hour; that the first the motorman lessened the speed was about 250 feet from Wilton Street; that an automobile running about forty miles an hour crossed in front of the Haber car; that at that time the front car of the train was distant from Wilton

Street close to 100 feet; that when the automobile crossed in front of the Haber car, the Haber car lessened its speed; that the time the automobile started to stop the brakes were put on the train the last time; "I would judge it was 100 feet from the Haber car after it started to put on the brakes, the car went across the intersection of Wilton street. I think.it was the air brakes that I heard go on when the train was about 100 feet from the point of the collision. Possibly I am in error as to the distance the train was away. It was between seventy-five and 100 feet."

A witness by the name of Hill, called for the defendant, testified that he was riding on the train and that just preceding the application of the brakes the train was running between fifteen and twenty miles per hour.

H. B. Spurlin, the motorman on the train, testified that he was operating a three-car interurban train, that as he came toward Wilton Place, he threw off the power and was coasting along at the rate of about fifteen miles per hour; that he first noticed the automobile speeding along at about 500 or 600 feet back from the intersection; that the automobile was traveling much faster than the train; that he thought the automobile was running between thirty and thirty-five miles an hour; that he was ringing the bell all along; that the traffic coming east and west on Sixteenth Street was pretty heavy; that when the Haber car came to the intersection it slowed down and then shot forward and slowed down suddenly in front of the train. "When the automobile came on the track I was about fifteen feet away. I threw the train into emergency. That means I put on all the brakes I had. It was not possible for me to stop and avoid the collision. I figured the automobile was going to slow down and stop when it came to Sixteenth Street. I would say the train stopped in about seventy feet, that it made a good stop, that the automobile slowed down about twenty feet distant from the north line of Sixteenth Street. I was not 100 feet away when the automobile slowed down on the track in front of me. When I saw him coming in I commenced trying to stop. When I saw this auto apparently about to get on my track and slowed down, I did everything I could to avoid hitting him. I did not slow down and start up the train again. I simply threw off the

78 Cal. App.—40

power and let the train coast. That is what we usually do when we pass Arlington.''

Dale R. Roundtree, a witness, was riding in the first car of the train. He testified before the brakes went on, in his judgment, the train was not exceeding twenty miles an hour.

S. E. Wilson, a witness called for the defense, testified that he was assistant superintendent of the Western Division of the Pacific Electric Railway Company; that he was a passenger on the train; that the train was running between fifteen and eighteen miles per hour; that there was a switch point at Arlington 400 feet distant; that at the time the emergency brakes were applied, in his judgment, the front end of the train was fifty, possibly sixty, feet from the west curb line of Wilton Street. ''The train did not slow down as if to stop and then start up again. After the brakes went on, the next thing I heard was the noise of the machine careening backward. From where the train hit the automobile until it stopped was between eighteen and nineteen steps. I stepped the distance. From the place where the brakes went on to where it stopped, I would say was a distance of about 130 feet. That was a good stop for a train running between fifteen to eighteen miles per hour of the weight of a three-car interurban.''

Miss A. A. Way, a witness called for the defense, stated that she was riding on this train; that she heard the bell ringing several times and that the speed of the train was just as usual.

Mrs. Jessie M. Way testified that she was riding on the train and that she heard the brakes go on before the crash; they were very close together.

Miss Voigts, a witness for the defendant, testified that she was sitting in the first car of the train; that she saw the automobile before it was struck; that they were pretty close to it when it came out of the side street; that the motorman stopped the train very quickly; that the motorman was sitting quiet before the stop; that the automobile came very quickly from the side street and then stopped. ''I think the automobile was coming at about the same speed as the train, because I thought the automobile could not make it.''

Harry R. La Grange, a witness called for the defendant, testified that he was seated in the first car in the third seat back from the motorman; that he was looking straight ahead and saw the automobile coming in front of the train; that the train was running about fifteen miles per hour; that he observed the clanging of the bell as the car approached the intersection.

Mrs. Elliston, a passenger on the electric train, testified that she saw the automobile coming from the left; that she thought it was running about thirty miles per hour; that when she first saw the automobile it was about as far from the intersection as the train; that she did not hear the bell or whistle, that the train stopped very suddenly.

Arthur J. Brown testified that he was the head conductor on the train, that the train was running from fifteen to twenty miles an hour and, further, that the motorman was ringing the bell and that the train had not reached a speed of thirty miles an hour at any place between Arlington and the accident.

George Malhoit testified that the train was going between fifteen and seventeen miles per hour, but the train did not slow down and then start up; that the train went past the point where it struck the automobile a little more than a car length.

The foregoing is, in substance, the testimony upon which the jury found for the defendant. There was no testimony introduced as to the width of the streets, nor, as has been said, was any testimony introduced as to the distance in which either the train or automobile could be stopped. The testimony shows that the occupants of the automobile were aware of the approach of the train and the motorman of the train also had knowledge of the approach of the automobile. No question is made as to the sufficiency of the evidence to justify the verdict of the jury. Nor is there any real question presented as to the contributory negligence on the part of the automobile driver. The testimony shows that he was fully cognizant of the approach of the train; that he saw the condition of the traffic and thought he had plenty of time to cross the track before the train would reach him, and that he was suddenly compelled to do something he was not expecting to do, to wit, slow up his

automobile to avoid colliding with the machine driving in the same direction with the defendant's train; that the automobile that passed in front of him had been running along by the side of the train and so had not been perceived. The conclusion seems unavoidable from the facts presented that the driver of the automobile was guilty of a high degree of negligence in attempting to cross the track when his view of the traffic speeding along on the opposite side of the train was obscured and that his attempting to do so, when the train was approaching so closely, amply justified the jury in reaching such a conclusion.

For grounds of reversal the appellant sets forth that the court erroneously refused to give the following instructions asked for by the plaintiffs: 1. "It was the duty of the Pacific Electric Railway Company on the occasion in controversy here to propel its electric car in a careful manner and with due regard for the safety and convenience of pedestrians and other vehicles upon such street, and a failure to do so was negligence." "The defendant pleads in its answer contributory negligence on the part of the driver of the automobile and on the part of plaintiffs, yet, contributory negligence would not be a bar to plaintiffs' cause of action if they have established the same, if you shall further believe from the evidence that at the time of the accident, after the motorman discovered the peril of the plaintiffs his manner of operating the car amounted to wilful or reckless conduct, for contributory negligence in this state is never a defense as a bar where the proximate cause of an accident is the wanton and reckless conduct of the person so pleading such contributory negligence as a defense"; and 3. "In this case there is no evidence which warrants the jury in the conclusion that plaintiffs, or either of them, were in any degree in the control of the operation of the automobile in which they were riding at the time of the accident, or that the relationship of the plaintiffs to the driver of the automobile was such that his negligence, if any, could be imputed to them. Under such circumstances, the question of whether the driver of said automobile was guilty of negligence is not material, nor to be considered by you in the decision of this case. You are to determine merely whether the defendant was guilty of negligence proximately

contributing to and causing the accident, and whether the plaintiffs or any of them, were themselves .guilty of negligence which contributed to such accident, and if you find that defendant was guilty of such negligence, and the plaintiffs were not, then the amount of damages sustained by the plaintiffs and each of them, as the result of such negligence"; and also erred in giving to the jury the following instruction, which we will number for convenience "A," "B," and "C":

### A.

"I charge you that plaintiffs were required to expect and anticipate, to the extent that a prudent person of their age and experience and knowledge would anticipate, that defendant would operate its cars on its line at the usual and customary rate of speed in said locality; and defendant, if operating lawfully and in the usual manner, had a right to expect (until it had actual knowledge to the contrary) that any automobile driver would anticipate and look out for such speed of operation of its cars and trains."

### B.

"You are instructed that if you believe from the evidence, that the approach of defendant's car was visible to anyone in plaintiff's position exercising ordinary care, then said motorman had a right to assume that the approach of his car would be visible to plaintiffs' driving said automobile towards said crossing, and had a right to expect that the approach of his car would be heeded by plaintiffs under such circumstances, and that plaintiffs would not attempt to cross so close in front of said car as to make ·a collision therewith unavoidable. And the motorman had a right to operate his car forward under such assumption and to rely thereon until he had actual knowledge that an attempt would be made to drive said automobile across said track in front of his car."

### C.

"If you find that this accident was caused solely and proximately by either negligence on the part of the young Mr. Haber, driving the automobile, or by negligence on the part of some other automobile driver in getting into his way and blocking him from getting off the track, you cannot hold

the railway company liable and your verdict must be in its favor.''

[1]    In so far as the alleged error of the court to give the plaintiffs' requested instruction No. 1, it is sufficient to say that the substance of that instruction is fully set forth in other instructions given by the court to the jury, wherein the jury was told that the operator of a vehicle has a right to expect that those in charge of street-cars will operate them in the manner and run them at the speed which is customary at the particular place, and that they will give the usual warnings and signals, and take the usual precautions to avoid injuring others. Each may rightfully expect that the other will, at the proper time, discharge his proper duty toward others. That the plaintiffs and the driver of the automobile had a right to rely upon the presumption of law that the motorman in charge of and operating an electric car upon a street would propel the same at a lawful rate of speed and would not propel the same at an excessive rate of speed in violation of an ordinance of the city of Los Angeles and that all of them had a right to rely upon such presumption of law, until by the use of ordinary care, they, or any of them, had notice to the contrary.

The court also instructed the jury that pedestrians and automobile drivers had an equal right to the use of the street with the defendant, save and except that the defendant could not turn aside, but that its cars must follow the tracks and that the pedestrian and automobile driver, in due season, should yield the right of way. The court also fully instructed the jury as to the duty of all parties to exercise due precaution to prevent accidents upon the streets and that a pedestrian or automobile driver may act upon the theory and belief and expectation that others, as well as himself, will use the reasonable care that the situation requires to avoid collisions, etc.

It may also be noted that plaintiffs' requested instruction No. 1 is also faulty in that it contains an implication of negligence on the part of the defendant. There should have been inserted words to the effect that if the jury found from the testimony a failure on the part of the defendant to operate its train with regard for the safety and convenience, etc., then, and in that case, the defendant was negligent.

[2] Appellants' requested instruction No. 2, refused by the court, appears to have been requested on the theory that it sets forth the doctrine of last clear chance. On the part of appellants it is argued at length that the testimony which we have set forth shows that the doctrine of last clear chance is applicable. On the part of the respondent it is likewise argued at length that this doctrine is inapplicable; that the plaintiffs saw that the motorman had a legal right to assume that the plaintiffs would not venture into a place of danger and that when the plaintiffs had, by the action of the automobile driver, created the situation of peril, there remained no opportunity whatever for the stopping of the train. The testimony shows that at the time the plaintiffs entered the perilous zone, or the track upon which the collision occurred, the train in question was from 40 to 100 feet away, one witness testifying to a greater distance, but his testimony shows that his estimate was little more than speculation. All the testimony illustrating the acts of the parties at the critical moment is to the effect that at the instant of time when the automobile driver placed his machine in a perilous position by slowing up while on the east-bound track, the motorman, irrespective of the distance which the different witnesses estimated the front car of the train to be from the automobile, immediately applied the emergency brakes and did all that could be done to stop the train. The testimony of the automobile driver shows that had he not slackened the speed of his machine after entering upon the track, there would have been no collision. Under these circumstances, without any testimony whatever showing the distance in which the train could be stopped, or that anything was left undone which could have been done by the motorman, we do not see how any instruction on the subject of last clear chance could have materially affected the verdict of the jury. But, assuming that an instruction on the subject of last clear chance might have properly been given to the jury, we nevertheless think that the instruction requested by the appellants was properly refused, as not being either a clear or correct statement of the law on that subject. The requested instruction omits entirely the ability of the plaintiffs to extricate themselves from the impending peril and, also, omits the necessary element that the failure

to take advantage of the so-called last clear chance was the proximate cause of the injury. By an examination of the elements entering into an instruction so framed as to present the subject of last clear chance, it will be readily perceived that the requested instruction is deficient. **[3]** These elements are set forth in the opinion of the supreme court in the case of *Townsend* v. *Butterfield*, 168 Cal. 568 [143 Pac. 762], as follows:

1. "Whether or not the plaintiff's danger was perceived by defendant in time to enable him, by ordinary care, to have avoided injuring plaintiff";

2. "Whether, after discovering plaintiff's situation of peril, defendant did exercise ordinary care, or did neglect to do some act within his power, which, if done, would have prevented the injury";

3. "Whether or not both parties were guilty of concurrent negligence continuing to the time of the accident and each contributing thereto";

4. "Whether or not the defendant knew of the danger and could have avoided it against the plaintiff who did not in fact know thereof."

To which we may also add the inability of the plaintiff, by the exercise of ordinary care, to extricate himself from the impending peril. Two of these elements necessary in presenting the subject of last clear chance are set forth in the recent case of *Darling* v. *Pacific Electric Ry.*, 197 Cal. 702 [242 Pac. 703] : 1. Whether or not after the plaintiff became aware of the threatened danger she could not by the exercise of ordinary care have extricated herself; 2. Whether or not the motorman had actual knowledge of the plaintiff's condition and could by the exercise of ordinary care have avoided the accident, but negligently failed to do so. In the case of *Iliardi* v. *Central Cal. Traction Co.*, 36 Cal. App. 488 [172 Pac. 763], this court sets forth an instruction held to be a correct statement of some of the elements necessary to be incorporated in an instruction of the subject of last clear chance. One of the further necessary elements to be included in an instruction on the subject of last clear chance is, among others, set forth in the case of *Young* v. *Southern Pac. Co.*, 182 Cal. 369 [190 Pac. 36]. There the court treats this subject as follows:

"Under the last clear chance doctrine the peril which calls upon the train employees to act must be an actual one from which the imperiled party cannot escape by the exercise of ordinary care. Until the deceased reached the point from which he could not escape by the exercise of ordinary care, either by stopping or accelerating his pace, the doctrine of the last clear chance does not apply. The rule is well stated in the following quotation from *French* v. *Grand Trunk Ry.*, 76 Vt. 441 [58 Atl. 722] : 'It is true that when a traveler has reached a point where he cannot help himself—cannot extricate himself—and vigilance on his part will not avert the injury, his negligence in reaching that position becomes the condition, and not the proximate cause, of the injury and will not preclude a recovery; but it is equally true that if a traveler, when he reaches the point of collision, is in a situation to help himself, and, by a vigilant use of his eyes, ears, and physical strength, to extricate himself and avoid injury, his negligence at that point will prevent a recovery, notwithstanding the fact that the trainman could have stopped the train in season to have avoided injuring him. In such a case the negligence of the plaintiff is concurrent with the negligence of the defendant, and the negligence of each is operative at the time of the accident. When the negligence is concurrent and operative at the time of the collision, and contributes to it, there can be no recovery.' "

The court then considers other elements which we have mentioned herein as necessary to set forth the doctrine of the last clear chance. In *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748 [134 Pac. 709], is set forth the elements necessary to be incorporated in an instruction when given to a jury upon the subject of last clear chance. In 19 Cal. Jur. 653, 654, section 801, it is pointed out that the doctrine of the last clear chance is not applicable until one reaches a point of peril from which he cannot extricate himself by the exercise of ordinary care, that the doctrine presupposes that he has placed himself in that position by his own negligence. The peril must be an actual one. It is not absolutely essential that it is physically impossible for the plaintiff to escape. It is sufficient that he is unaware of the danger. It is also pointed out that if the injured person is observed in a position where, with the exercise of reason-

able care upon his part, no injury will fall to him, other persons have the right, until circumstances clearly point to the contrary, to assume that he will not expose himself to danger. Section 82 of the same volume sets forth that the defendant must have had actual knowledge of the plaintiff's dangerous position, that he realized that the plaintiff was either oblivious of the danger or could not extricate himself therefrom by the exercise of reasonable care. It is not enough that the defendant would have observed the plaintiff but for remissness upon his part, etc. It is further said that the operator of a train or street-car has a right to assume that one approaching the track is in the possession of his normal senses, and that he is able to and will take care of himself. The defendant, under such circumstances, or the motorman in this case observing the situation, would be held to the exercise of reasonable diligence, when analyzing the situation. Under the circumstances disclosed in this case, the situation of peril arose when the automobile driver slackened the speed of his car upon the railroad track at which instant of time, as we have said, the testimony shows that the motorman applied the emergency brakes. Be this as it may, however, the requested instruction does not present the necessary elements which we have set forth in order to submit to the jury in the form of a statement of the law of the doctrine of the last clear chance and was properly refused.

[4] As to the third requested instruction refused by the court, it is sufficient to refer to the testimony of George B. Haber, the father of the driver of the automobile to show its incorrectness. The instruction commences with these words, "in this case there is no evidence which warrants the jury in the conclusion that plaintiffs, or either of them, were in any degree in the control of the operation of the automobile in which they were riding at the time of the accident." The testimony shows that there was no actual physical control, but there was sufficient to present to the jury the question whether, under the circumstances, the owner of the car, who had authorized his son to drive the car and take his family therein was not in a position to give directions and, also, order the automobile stopped when he observed the approach of the three-car electric train at a sufficient distance away,

when by stopping the automobile, all danger of collision might have been avoided. All proper portions of the requested instructions were included in instructions actually given. The court did instruct the jury that the negligence of the automobile driver was not imputable to passengers; that the fact that the plaintiffs and the driver of the automobile in question were engaged in a pleasure trip together was not sufficient to impute the negligence of the driver to the occupants of the automobile. The court also instructed the jury that the negligence of the driver was not imputable to the plaintiffs, unless the jury found that the plaintiffs, or any one or more of them, as the case might be, were in whole, or in part, in control of the mechanical operation of said automobile, or unless the jury found the relationship of co-adventurers, or master and servant, or principal and agent existed. The court further instructed the jury that the mere fact of the relationship of the parties would not warrant imputing to any of them the negligence of the driver. It thus appears that, eliminating the question as to instructing the jury that there was no evidence, the court properly instructed the jury as to the law applicable to the case.

[5-6] As to the instructions "A" and "B" given by the court to the jury, we find nothing therein contrary to a correct statement of the law. In the case of *Bibby* v. *Pacific Electric Ry. Co.*, 58 Cal. App. 658 [209 Pac. 387], almost identical questions were presented and it was there held that such instructions are proper. It is to be noted that a hearing in this case in the supreme court was denied. In the Bibby case the court instructed the jury that the motorman of the car exercising ordinary care has the right to assume that one driving an automobile would not attempt to drive upon the track so close to an approaching car as to be in danger of being struck thereby, when the approach of the car could be seen or heard by the use of ordinary care; that it is not the duty of the motorman in such situation to slow down, or to stop his car, when the automobile first approaches the track, nor until the motorman sees, or in the exercise of ordinary care should conclude, that the automobile would continue to proceed upon the track in front of the car. The court further instructed the jury in that case as to the duty of the automobile driver to see the ap-

proaching car when the same was visible. In the case at bar it is admitted by all the parties that the approaching car was visible several hundred feet away. In *Kuchler* v. *Milwaukee Elec. Ry. & Light Co.*, 175 Wis. 107 [Ann. Cas. 1916A, 891, 146 N. W. 1133], it is said: "A motorman has the right to presume that the driver of the horse, although only a few feet from the track, would stop and not make an effort to cross immediately in front of a rapidly approaching car," citing a number of cases. See, also, 19 Cal. Jur., page 654, section 82, to the effect that the operator of a train or street-car has the right to assume that one approaching the track is in possession of his normal senses and that he is able to and will take care of himself. **[7]** While it is said that the duties of a motorman and the automobile driver approaching an intersection are reciprocal, yet from the fact that the street-car is confined to its tracks, it is the duty of the automobile driver to give way to its clear passage. **[8]** It is the duty of the automobile driver to observe the approach of a street-car and use ordinary care to avoid a collision therewith, and when there is a failure so to do, in order that recovery be had, it must be shown that the motorman actually observed the peril in time to avoid the injury, before the doctrine of the last clear chance applies. (23 Cal. Jur., p. 881, sec. 45; *Scott* v. *San Bernardino Valley etc. Co.*, 152 Cal. 610 [93 Pac. 677]; *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748 [134 Pac. 709]; *Lambert* v. *Southern Pac. R. R. Co.* 146 Cal. 231 [79 Pac. 873]; *Arnold* v. *San Francisco etc. Rys.*, 175 Cal. 5 [164 Pac. 798].)

In the case at bar all parties saw the approach of the electric train, knew that it was being propelled forward, and, therefore, whether the jury concluded that the bell was or was not rung according to the testimony of different witnesses, which it had the right to accept or reject, was wholly immaterial, and we do not need to consider that phase of the case further than to say that there was testimony from which the jury might conclude that the bell was being rung. The plaintiffs saw the train and knew that it was approaching.

**[9]** The appellants strongly insist that the giving of the instruction that "if the accident was caused solely and proximately by either the negligence of the driver of the

automobile in which the plaintiffs were riding, or on· the part
of the automobile driver blocking him from coming off of the
track, the plaintiffs cannot recover.'' The point is made
that this instruction is outside the issues, in that the jury
was allowed to consider the negligence of parties not before
the court.   Taken in the abstract, this appears to be true,
but when considered in relation to all the circumstances
attending the case, it is evident that the jury was not mis-
led.   If the sole cause of the accident was attributable to
others than the defendant, the jury necessarily would con-
clude that the defendant was not negligent.   If the defend-
ant was negligent in any particular contributing to the ac-
cident, then no other person could possibly be the sole cause.
In the Bibby case, *supra*, in the instructions given in that
case to which we have referred and where two defendants
were charged with negligence, the court instructed the jury
as follows: ''If you find from the evidence that the driver
of the autobus was negligent, etc., and that such negligence
on his part was alone the direct and proximate cause of the
accident, then plaintiffs cannot recover against the defend-
ant railway company.''   This instruction was held to be
correct.   In *Birmingham Light & Power Co.* v. *Ely*, 183
Ala. 382 [62 South. 816], a case involving an automobile
collision and a street-car, the court held that the following
instruction should have been given: ''If the jury believed
from the evidence that the negro chauffeur in charge of the
automobile in which plaintiff was riding was negligent in
running the automobile down the hill at the time of the
collision between it and defendant's street car, and that
this negligence on his part was the sole proximate cause of
the collision and plaintiff's injury, then you should find a
verdict for the defendant.''   In the case at bar, if the sole
proximate cause of the collision was the negligent operation
of the automobile by George M. Haber, the driver thereof,
then, and in that case, the plaintiffs cannot recover of or
from the defendant Pacific Electric Railway Company.   We
do not think the reference to a possible third party con-
tained in the instruction misled the jury to the prejudice of
the plaintiffs and,· therefore, that section 4½ of article VI
of the state constitution applies in this case.   The evidence
shows that the jury was fully warranted in finding that the

sole and proximate cause of the injuries to the plaintiffs was the careless and reckless and negligent driving of the automobile. Venturing upon a railway with a three-car train approaching, visible at all times, seen to be approaching, in view of the traffic on the opposite side of the track, which might at any moment intercept the progress of the automobile makes almost unavoidable the conclusion that the driver of the automobile was alone responsible, to say nothing of sufficiently supporting the verdict of the jury.

The judgment is affirmed as to all cases.

Needham, J., *pro tem.*, and Finch, P. J., concurred.